**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

HOLLYNN D'LIL,
          *Plaintiff-Appellant,*

    v.

BEST WESTERN ENCINA LODGE &
SUITES; ENCINA-PEPPER TREE LTD.;
DAVID Z. WEBBER; JEANETTE
WEBBER; CECELIA E. VILLINES,
          *Defendants-Appellees.*

No. 06-55516

D.C. No.
CV-02-09506-DSF

OPINION

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Argued and Submitted
November 5, 2007—Pasadena, California

Filed August 12, 2008

Before: Betty B. Fletcher, Stephen Reinhardt, and
Pamela Ann Rymer, Circuit Judges.

Opinion by Judge Reinhardt;
Partial Concurrence and Partial Dissent by Judge Rymer

10353

**COUNSEL**

Timothy S. Thimesch, Esq, Thimesch Law Offices, Walnut Creek, California, for the plaintiff-appellant.

Jeffrey H. Baraban, Esq., Christopher S. Teske, Esq., James S. Link, Esq. (argued), Baraban & Teske, Pasadena, California, for the defendants-appellees.

Martin H. Orlick, Esq., Jeffer, Mangels, Butler & Marmaro, LLP, San Francisco, California, for the defendants-appellees.

**OPINION**

REINHARDT, Circuit Judge:

We consider whether Hollynn D'Lil has standing to seek attorney's fees in an action brought against the Best Western Encina Lodge & Suites ("Best Western Encina") under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq., and California civil rights laws. We conclude that she does.

## I. Background

Hollynn D'Lil is a paraplegic who requires the use of a wheelchair for mobility. On December 13, 2001, D'Lil traveled from her home in Sacramento to Santa Barbara, California in order to conduct a property inspection for attorney

Jason Singleton.[1] Early that day, she called the Best Western Encina to reserve a wheelchair accessible room for the night. She was informed that the hotel had an available room that lacked a roll-in shower, but was fully accessible in all other respects. She reserved the room.

When D'Lil arrived at the hotel that evening, she encountered what she describes as "multiple and severe barriers to disabled access." Steep ramps, lack of handrails, and high counters made it difficult for D'Lil to maneuver in the front lobby and desk area. After D'Lil checked in and proceeded to her room, she discovered that the area of the hotel containing the designated disabled access rooms did not have any van accessible parking spaces nearby. Once inside her room, D'Lil found that many of the facilities, including the door hardware, curtain and heating controls, and lamps were either too high or too far from a clear path of travel for her to use. The path to the bathroom was blocked by beds and furniture and the bathroom itself lacked sufficient room to approach and safely use the toilet, which was too low to the ground. The grab bars on either side of the toilet were not properly positioned nor were they of the correct length, resulting in "bruises and strains to both [of D'Lil's] arms and legs while trying to use the facility." The bathtub was similarly inaccessible.

On December 13, 2002, D'Lil filed suit against the Best Western Encina seeking injunctive relief under Title III of the ADA,[2] injunctive relief and damages under California civil

---

[1] D'Lil works as an "accessibility consultant," contracting with private attorneys and local governments to evaluate properties for barriers to disabled access.

[2] Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment . . . of any place of public accommodation." 42 U.S.C. § 12182(a). "Discrimination" is defined as "a failure to remove . . . barriers . . . where such removal is readily achievable" or, "where an entity can demonstrate that

rights laws, as well as attorney's fees, litigation expenses, and costs. After three years of litigation, the parties entered into a consent decree that settled all issues related to injunctive relief and damages. The issue of attorney's fees, litigation expenses, and costs was reserved for future resolution.

D'Lil then filed a motion for attorney's fees. In opposing D'Lil's motion, the defendants did not contest her standing to sue.[3] The district court nevertheless expressed "concern . . . that the issue of standing was never resolved" and issued a sua sponte order requiring the parties to address it. In response to the district court's order, both parties filed briefs on standing and an evidentiary hearing was held, at which D'Lil testified.[4] The "only question" with which the district court was concerned at the hearing was whether D'Lil had a "legitimate intent to return" to the Best Western Encina at the time that the complaint was filed. After hearing D'Lil's testi-

---

the removal of a barrier . . . is not readily achievable, a failure to make . . . accommodations available through alternative methods if such methods are readily achievable." 42 U.S.C. § 12182(b)(2)(iv)-(v). Title III provides for injunctive relief as the exclusive remedy for private individuals seeking to enforce the law. 42 U.S.C. § 12188(a)(2).

[3]Although defendants did not raise the issue in opposing the motion for attorney's fees, they had previously challenged D'Lil's standing in their motions to dismiss and for partial summary judgment. Both challenges were rejected.

[4]D'Lil's brief as well as her attorney's communications with defense counsel and the court prior to the evidentiary hearing reflect some confusion as to the scope of the issues that were to be addressed at the hearing. At an earlier stage of the litigation, D'Lil filed an unsuccessful motion in limine to preclude discovery of her approximately sixty past ADA suits. In his brief on standing, counsel renewed his objections to the inclusion of evidence related to D'Lil's prior litigation. Although a preliminary hearing was scheduled for the purpose of clarifying the scope of the evidentiary hearing, it was later cancelled. D'Lil argues that her due process rights were violated when the district court cancelled the preliminary hearing. Because we resolve this case on standing grounds, we do not reach this argument.

mony and receiving additional briefing from the parties, the district court found that D'Lil failed to provide evidence of her intent to return "as of December 2002." The court also expressed skepticism that D'Lil would be able to establish standing even if she had provided such evidence, noting concerns about the credibility of D'Lil's professed desire to return in light of her involvement in multiple prior ADA suits. Accordingly, the district court concluded that D'Lil failed to meet her burden of establishing Article III standing, and that the court therefore lacked jurisdiction over her attorney's fees motion. D'Lil subsequently filed motions for a new trial and to renew her pending motion for attorney's fees. The district court denied D'Lil's motions and imposed sanctions. This appeal followed.

We have jurisdiction pursuant to 28 U.S.C. § 1291. Whether a party has standing to pursue its claim is a question of law that we review de novo. *See Skaff v. Meridien North America Beverly Hills, LLC*, 506 F.3d 832, 837 (9th Cir. 2007) (citing *Hartman v. Summers*, 120 F.3d 157, 159 (9th Cir. 1997)). We review the district court's findings of fact for clear error, *id.*, and afford "great deference to district court findings relating to credibility[,]" *United States v. Jordan*, 291 F.3d 1091, 1100 (9th Cir. 2002).

## II.  Discussion

### A.

**[1]** As an initial matter, we reject D'Lil's argument that the district court lacked the authority to raise the issue of standing sua sponte. "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). For that reason, both the Supreme Court and this court have held that whether or not the parties raise the issue, " '[f]ederal courts are *required* sua sponte to examine jurisdictional issues such as standing.' " *Bernhardt v. County of Los Angeles*, 279 F.3d

862, 868 (9th Cir. 2001) (internal citation omitted) (emphasis added); *see also United States v. Hays*, 515 U.S. 737, 742 (1995). The district court thus "had both the power and the duty to raise the adequacy of [D'Lil's] standing sua sponte." *Bernhardt*, 279 F.3d at 868.

**[2]** D'Lil's principal rejoinder is that the question of subject matter jurisdiction was resolved by the parties in the consent decree, and that the district court was therefore powerless to reexamine the issue by challenging D'Lil's standing after the decree became final. This argument lacks merit for two reasons. First, it proceeds from the faulty premise that the parties stipulated to the existence of standing in the consent decree. Although the consent decree contains a stipulation to the existence of federal question jurisdiction, the decree is silent on the issue of standing. The parties neither stipulated to standing nor to any facts that would support it.

**[3]** Second, even if the consent decree did contain such a stipulation, it would be of no moment. As the Supreme Court has explained, "[t]he question of standing is not subject to waiver . . . ." *Hays*, 515 U.S. at 742; *see also United States v. Ceja-Prado*, 333 F.3d 1046, 1049 (9th Cir. 2003). Moreover, whatever effect the parties' agreement (and the court's acquiescence therein) may have had on the entry of the consent decree, our precedent makes clear that the court remains under a continuing obligation to examine its jurisdiction where, as here, the parties consent to the settlement of a case but leave for future resolution the matter of attorney's fees. *See Smith v. Brady*, 972 F.2d 1095, 1097 (9th Cir. 1992) ("[I]f the district court lacked jurisdiction over the underlying suit, 'it had no authority to award attorney's fees.' ") (quoting *Latch v. United States*, 842 F.2d 1031, 1033 (9th Cir. 1988) (footnote omitted)). The district court was therefore required to revisit any concerns it had related to standing in considering D'Lil's motion for attorney's fees. We cannot fault it for doing so.

Having concluded that the district court had the authority to raise the issue sua sponte, we turn to the merits of its conclusion that D'Lil failed to meet her burden of establishing standing.

**B.**

[4] A party invoking federal jurisdiction has the burden of establishing that it has satisfied the "case-or-controversy" requirement of Article III of the Constitution; standing is a "core component" of that requirement. *Lujan*, 504 U.S. at 560. In order to meet its burden of establishing standing, a party must show three things:

> First, [it] must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan*, 504 U.S. at 560-61 (citations and quotation marks omitted). Each of these elements "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 561. The evidence relevant to the standing inquiry consists of "the facts as they existed at the time the plaintiff filed the complaint." *Skaff*, 506 F.3d at 838 (citing *Lujan*, 504 U.S. at 569 n.4). In evaluating whether a civil rights litigant has satisfied these requirements, "[t]he Supreme Court has instructed us to take a broad view of constitutional standing . . . especially where, as under the ADA, private enforcement suits 'are the primary method of obtaining compliance with the Act.' " *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039-40 (9th Cir.

2008) (quoting *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972)).

**[5]** In the present case, the only issue is whether D'Lil met her burden with respect to the second prong of the "injury in fact" requirement, specifically, whether she demonstrated that her injury was "actual or imminent" at the time that she filed her complaint. *Lujan*, 504 U.S. at 560. In the context of a suit for injunctive relief, this requirement may only be satisfied where a plaintiff demonstrates " 'a sufficient likelihood that he will again be wronged in a similar way' . . . . That is, he must establish a 'real and immediate threat of repeated injury.' " *Fortuyne v. American Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983), and *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)). The district court concluded that D'Lil did not satisfy this requirement because she failed to introduce evidence of her intent to return to the Best Western Encina at the time that she filed her complaint in December 2002.

**[6]** In recent years, we have clarified the scope of the "actual or imminent" injury requirement in the context of suits for injunctive relief brought under Title III of the ADA. In *Pickern v. Holiday Quality Foods, Inc.*, we held that

> a disabled individual who is currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA has suffered "actual injury." Similarly, a plaintiff who is threatened with harm in the future because of existing or imminently threatened non-compliance with the ADA suffers "imminent injury."

293 F.3d 1133, 1138 (9th Cir. 2002). Applying this rule in cases where, as here, the public accommodation being sued is far from the plaintiff's home, we have found actual or imminent injury sufficient to establish standing where a plaintiff

demonstrates an intent to return to the geographic area where the accommodation is located and a desire to visit the accommodation if it were made accessible. *See id.* (holding that plaintiff established an actual or imminent injury where he encountered barriers at a Holiday Paradise grocery store 70 miles from his home and stated that "he prefers to shop at Holiday markets and that he would [return to] shop at the Paradise market [near his grandmother's home] if it were accessible"); *Doran*, 524 F.3d at 1037-38 (holding plaintiff demonstrated actual or imminent injury where he established intent to return to 7-Eleven store 550 miles from his home on future trips, once the barriers to access were removed). We have explicitly *not* required ADA plaintiffs to engage in the "futile gesture" of visiting or returning to an inaccessible place of public accommodation in order to satisfy the standing requirement. *See Pickern*, 293 F.3d at 1135.

[7] In order to show the actual and imminent nature of her injury, then, D'Lil must demonstrate her intent to return to the Santa Barbara area and, upon her return, her desire to stay at the Best Western Encina if it is made accessible. On this record, there can be little doubt that she has done so. D'Lil's intent to return to the Santa Barbara area is evidenced by the regularity with which she visited the city before, during, and after her stay at the Best Western Encina. By her declaration, and her testimony at the evidentiary hearing, D'Lil demonstrated that she has been visiting the Santa Barbara area since the early 1980s for both business and pleasure.[5] From 1993 to 2000, she visited approximately 1-3 times per year in connection with her work for the state Department of Rehabilitation. In 2001, the year that D'Lil stayed at the Best Western

---

[5]In D'Lil's declaration, she attributes her fondness for Santa Barbara to "the region's beauty, the weather; the history of the region; my friends [the Marshes] who live there; my past frequent visits with my children, which provides me with a sort of history and familiarity with its surroundings that make vacationing there enjoyable; the many major attractions there, especially the Mission and the beach; the downtown shopping and the local cuisine, which is unique and outstanding."

Encina, she took three trips to Santa Barbara to visit her friends the Marshes, to vacation with her children, and to perform work for attorney Singleton. In the three years between her visit to the Best Western Encina and the filing of her declaration in the case, D'Lil returned to Santa Barbara four times to conduct business inspections and to visit the Marshes. At the evidentiary hearing, D'Lil testified to three upcoming trips that she was planning to the Santa Barbara area, including a vacation to visit the Marshes, an evidentiary hearing for another trial, and a prospective work trip to Carpinteria.

**[8]** D'Lil's desire to stay at the Best Western Encina on future trips to Santa Barbara if it were made accessible is also well supported by the evidence that she submitted at each successive stage of the litigation. In her complaint, D'Lil stated that she "would like to return and use the subject Best Western Encina on a spontaneous, but full and equal basis" but that she "is prevented from doing so by defendants' failure and refusal to provide disabled persons . . . with 'full and equal access' [to its] facilities." In opposing defendants' motion for summary judgment, D'Lil submitted a declaration again reiterating that she "definitely plan[s] on staying at the [Best Western Encina] when it is made accessible."[6] In that declaration, she explained that her preference for staying at the Best Western Encina during future trips to Santa Barbara was based on the hotel's proximity to downtown, its accessibility from the freeway, and its amenities, including lush gardening and fresh country linen quilts. At the close of her declaration, she summarized her preference for the Best Western Encina as follows: "It is a nice facility and fits with my needs with regards to taste, style, price and location . . . . If made accessi-

---

[6]This statement, like several others in D'Lil's declaration, was incorporated from a previous declaration in a related case that D'Lil filed against the Ramada Limited after an unsuccessful attempt to find an accessible room at that hotel during the same trip to Santa Barbara in December 2001. *See D'Lil v. Ramada Limited*, SACV 03-589-CJC (Shx).

ble, I would definitely choose it again during my visits to Santa Barbara." At the evidentiary hearing, D'Lil, consistent with her declaration, testified that she had a desire to stay at the Best Western Encina because "it's the kind of hotel that I would like to stay at. It's simple, and you park close to your room, and it has a place to eat so I don't have to get in the car and drive somewhere else to go eat. . . . . It meets the configuration of the kind of hotel I like to stay at. It's also less expensive than some of the other hotels."[7]

[9] Despite D'Lil's declaration and testimony detailing her intent to return to Santa Barbara and her preference for the Best Western Encina, the district court concluded that she failed to "even address[ ] the relevant issue" because, in the court's view, D'Lil failed to provide any evidence of her intent to return *at the time the action was filed*—December 13, 2002. *See Skaff*, 506 F.3d at 838; *Lujan*, 504 U.S. at 569 n.4. The district court's conclusion is somewhat baffling in light of the record in this case. Although D'Lil was never explicitly asked whether she intended to return as of December 13, 2002, that she so intended is the obvious and most reasonable inference to be drawn from her testimony.[8] D'Lil's

---

[7]At the evidentiary hearing, D'Lil also explained why she preferred the Best Western Encina to other accessible hotels in the area. One of the accessible hotels requires her to travel with a companion; another is expensive and is "very difficult to stay [at] because it's so far to go for everything"; a third she described as having "problems." Moreover, D'Lil testified that the small number of accessible rooms within each of these hotels decreases the chances that she will be able to secure a reservation on any given trip.

[8]We note that although the district court faulted D'Lil's counsel for failing to elicit explicit testimony about D'Lil's intent to return at the time that the complaint was filed, the court itself prompted D'Lil to testify as to her present intentions. At the evidentiary hearing, the court told plaintiff's counsel that it was "interested in why Ms. D'Lil *goes* to Santa Barbara or would want to stay in Santa Barbara." Evid. Hr'g Tr. at 59-60 (emphasis added). The court reiterated that "it's relevant to know why she *goes* to Santa Barbara, how often she *goes* to Santa Barbara, if at all" and declared that so long as D'Lil "*goes* to Santa Barbara, then that's all she needs to establish." *Id.* (emphasis added). Given this instruction, it is not surprising that counsel elicited testimony about D'Lil's present, rather than past, intentions.

testimony that she regularly visited Santa Barbara both before and after she filed the complaint evidences that she was a frequent traveler to Santa Barbara during the relevant time period. *See, e.g.*, *Pickern*, 293 F.3d at 1135 (finding standing where plaintiff traveled to Paradise weekly to visit his grandmother); *Doran*, 524 F.3d at 1040 (finding standing where plaintiff traveled to Anaheim "at least once a year on his annual trips to Disneyland").[9]

[10] D'Lil also gave detailed reasons as to why she would prefer to stay at the Best Western Encina during her regular visits to Santa Barbara if it were made accessible including the hotel's style, price, and location. Because D'Lil did not return to the hotel after she filed suit, she did not have an opportunity to develop new impressions of it. Nor is there any indication in the record that anything happened between the time that the complaint was filed and the evidentiary hearing that would alter D'Lil's opinion of the hotel or her desire to stay there once it was renovated. Thus, D'Lil's stated reasons for preferring the Best Western Encina at the evidentiary hearing were necessarily based on impressions of the hotel that were formed, and that she held, at the time that she stayed there and subsequently filed suit.

[11] In light of this testimony, we cannot agree with the district court that D'Lil failed to provide evidence of her

---

[9]A careful review of D'Lil's testimony also shows that she had at least one concrete plan to return to the Santa Barbara area at the time that she filed suit. *See Lujan*, 504 U.S. at 564. D'Lil testified that during her December 2001 trip to Santa Barbara, she "thought [she] would be doing some more work in Solvang." She thought it would be "great" to stay in Santa Barbara during that trip because it is "well-positioned between Solvang and Montecito, where [her] friend Hugh [Marsh] lives." As a result, she spent an afternoon in December 2001 looking for an accessible hotel at which she might be able to stay during that trip. D'Lil did in fact travel to Solvang for work in April 2003—just four months after the suit was filed—and stayed in Santa Barbara at that time. D'Lil therefore knew of a specific upcoming trip to the area, and had already begun to plan for it, at the time that the complaint was filed.

intent to return at the time that she filed suit. To the contrary, her testimony plainly evidences such an intent. Accordingly, we hold that D'Lil established that she suffered an "actual or imminent" injury sufficient to confer standing.

## C.

**[12]** The district court's purported credibility ruling does not disturb our conclusion that D'Lil sufficiently established her standing to sue. This is so primarily because the district court explicitly declined to decide the credibility issue, relying instead on the ground that D'Lil did not introduce evidence of her intent to return in December 2002 to find that she lacked standing: a ground that we reject *supra*. Nevertheless, the district court expressed concerns about D'Lil's credibility throughout its opinion. To the extent that its concerns might be viewed as an adverse credibility finding, we reject the legal reasoning on which such finding is based and, therefore, despite the deference we ordinarily owe its findings, reject its ultimate determination.

**[13]** The district court's concerns about D'Lil's credibility focused particularly on her past ADA litigation. In commenting on D'Lil's approximately sixty prior ADA suits, the court wrote, "it appears Plaintiff declares that she intends to return to nearly every place she sues (as indeed she must in order to establish standing in federal court). While some of these allegations may have initially been accepted in other cases without question, even at the trial stage, as more suits are filed and more — and contradictory — allegations are made, credibility concerns increase." Dist. Ct. Order at 17.

**[14]** The attempted use of past litigation to prevent a litigant from pursuing a valid claim in federal court warrants our most careful scrutiny. *See, e.g.*, *Outley v. City of New York*, 837 F.2d 587, 592 (2d Cir. 1988). This is particularly true in the ADA context where, as we recently explained, the law's provision for injunctive relief only "removes the incentive for

most disabled persons who are injured by inaccessible places of public accommodation to bring suit . . . . As a result, most ADA suits are brought by a small number of private plaintiffs who view themselves as champions of the disabled. . . . For the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA." *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1062 (9th Cir. 2007) (citing Samuel R. Bagnestos, *The Perversity of Limited Civil Rights Remedies: The Case of "Abusive" ADA Litigation*, 54 U.C.L.A. L. Rev. 1, 5 (2006)). Accordingly, we must be particularly cautious about affirming credibility determinations that rely on a plaintiff's past ADA litigation.

**[15]** Here, the district court relied on D'Lil's prior ADA suits to question the sincerity of her intent to return to the Best Western Encina. The court noted that D'Lil had not returned to six hotels that she sued during a 2002 trip to Redding, California and found it implausible that a plaintiff with approximately sixty prior ADA suits sincerely "intends to return to nearly every place she sues." The record contains no evidence of whether those places had been made accessible, such that D'Lil could have safely returned if she so wished. Moreover, whether or not D'Lil visited the hotels in Redding says little about her intent to visit the Best Western Encina, considering that D'Lil identified specific reasons—including the presence of the Marshes and expected future work in Solvang—for returning to Santa Barbara. The district court's speculation about the plausibility of D'Lil's intent to return to each place of public accommodation that she sued is further undermined by evidence of D'Lil's extensive and frequent travel throughout the state, buttressing her claim that she would again have occasion to patronize the establishments she sued if they were made accessible. Although we afford great deference to a district court's credibility assessments, on this record we cannot agree that D'Lil's past ADA litigation was properly used to impugn her credibility. Accordingly, because the district court

focused on D'Lil's history of ADA litigation as a basis for questioning the sincerity of her intent to return to the Best Western Encina, we reject its purported adverse credibility determination.

**D.**

**[16]** Finally, D'Lil requests that we reassign this case to a different district judge on remand.[10] "Remand to a different trial judge is appropriate under a demonstration of personal bias or in 'unusual circumstances.' " *Smith v. Mulvaney*, 827 F.2d 558, 562 (9th Cir. 1987) (citations omitted). To determine whether "unusual circumstances" are present, we consider:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*Bolt v. United States*, 509 F.3d 1028, 1035 (9th Cir. 2007) (citation omitted).

**[17]** Although the record reflects a sense of frustration on the part of the district judge with D'Lil and her counsel, we find no evidence of personal bias. *See, e.g.*, *Liteky v. United States*, 510 U.S. 540, 555 (1994) ("[J]udicial remarks during the course of a trial that are critical or disapproving of, or event hostile to, counsel, the parties, or their cases, ordinarily

_____

[10]Our authority to do so derives from 28 U.S.C. § 2106, which affords appellate courts the power to "require such further proceedings to be had as may be just under the circumstances."

do not support a bias or partiality challenge.”). Nor are any “unusual circumstances” present that would counsel in favor of reassignment. We have no reason to believe that the district judge will not follow both the letter and spirit of this opinion. We therefore decline D'Lil's request.

### III.   Conclusion

For the reasons set forth above, we reverse the district court's dismissal of D'Lil's motion for attorney's fees for lack of standing as well as its imposition of sanctions, and remand for that court to consider the merits of the motion.

**REVERSED and REMANDED.**

---

RYMER, Circuit Judge, concurring in part and dissenting in part:

I agree with Part II.A but not with Parts II.B and C of the majority opinion. Consequently, I concur in Part II.A and dissent as to Parts II.B and C.

Part II.B acknowledges (properly, in my view) the need for an ADA plaintiff to show “a real and immediate threat of repeated injury” for purposes of standing. *Fortyune v. American Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Then it declines (improperly, in my view) to accept the district court's finding that D'Lil failed to provide evidence of her intent to return to the Best Western Encina as of the time her complaint was filed. In this, as I see it, the analysis is flawed.

First, it dismisses *Lujan*'s distinction between “ ‘some day’ intentions” and “concrete plans,” 504 U.S. at 564, by stating

that ADA plaintiffs are "*not* required . . . to engage in the 'futile gesture' of actually returning to an inaccessible place of public accommodation in order to satisfy the injury in fact requirement." Maj. Op. at 10365 (citing *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1135 (9th Cir. 2002)). However, this conflates injury in fact with the *additional* requirement for injunctive relief — actual or imminent injury — which is met only if the plaintiff *is* likely to return such that it can be said her injury is "certainly impending." *Lujan*, 504 U.S. at 564 & n.2.

Second, instead of deferring to the district judge's assessment, the majority decides for itself what "the obvious and most reasonable inference to be drawn from [D'Lil's] testimony" is. Maj. Op. at 10367. That is not, however, our role when reviewing a district court's factual determinations after an evidentiary hearing. *See, e.g., Bouman v. Block*, 940 F.2d 1211, 1222 (9th Cir. 1991) (noting that we apply the deferential clearly erroneous standard to the district court's finding about the real reason a nonapplicant failed to apply for a position). Further, the opinion supports its own "findings" by allegations in the complaint and declarations in opposition to summary judgment, Maj. Op. at 10368, but these fall by the wayside once an evidentiary hearing is held. The evidence at that point is no longer viewed in the light most favorable to D'Lil; rather, controverted facts "must be supported by the evidence adduced" at the hearing. *Lujan*, 504 U.S. at 561.

Having heard testimony from D'Lil, the district court found that D'Lil had adduced *no* evidence as to her intent to return to Santa Barbara or to the Best Western (if accessible) as of December 2002, when the action was brought.[1] *D'Lil v. Best*

---

[1]As the court explained:

It is obvious that Plaintiff could easily have testified to her intention — as of December 13, 2002 — to return to Santa Barbara, her plans for returning to Santa Barbara, and her intention to stay

*Western Encina Lodge & Suites*, 415 F.Supp.2d 1048, 1054, 1055 (C.D. Cal. 2006). The record discloses no such evidence which, as the district court noted, would have been but one question away. No one disputes that the date of filing is the critical time; the existence of federal jurisdiction depends on the facts as they were when the action was commenced. *See Wilbur v. Locke*, 423 F.3d 1101, 1107 (9th Cir. 2005). Accordingly, I am not firmly convinced that the district court got it wrong.

Even though the majority holds that the court did get it wrong, Part II.C nevertheless discusses credibility. It recognizes that the district court only expressed concerns about credibility. Still, to the extent the court's concerns might be taken as an adverse credibility finding, the majority rejects the "legal reasoning" on which any such finding is based. Maj. Op. at 10369. Evidently this is because, in the majority's view, the district court "focused on D'Lil's history of ADA litigation as a basis for questioning the sincerity of her intent to return to the Best Western Encina." *Id.* at 10371. That is not, however, what the district court did. Rather, the court rea-

---

at the Encina Lodge if it were made accessible. Her testimony, *if* credited, and *if* factually sufficient to meet the *Lujan* requirements, were all that was necessary to meet her burden. Yet Plaintiff was asked no questions that would elicit such testimony. Instead, Plaintiff was asked about her present intentions — in other words, she was asked about her intentions approximately two years and nine months *after* the relevant time frame. Even then, Plaintiff said only that (1) she had "a case coming up for Mr. Singleton," (2) she had a trial in Santa Barbara (apparently the suit she filed against Ramada), and (3) she had "been talking about taking a vacation down to Santa Barbara." Plaintiff later testified that the case for Mr. Singleton was in Carpenteria, not Santa Barbara, and that she has no other work in Santa Barbara. Because questions relating back to 2002 were so obviously relevant and could so easily have been addressed, the Court can only assume the answers would not have established standing.

415 F.Supp.2d at 1054-55 (internal citations to the record omitted).

soned that *statements* D'Lil made in connection with other lawsuits are relevant to credibility. 415 F.Supp.2d at 1058 n.14. This is surely correct, for to the extent that D'Lil *represented* in prior lawsuits that she intended to return to the place of accommodation at issue in those cases in the reasonably near future, yet never has,[2] the sincerity of a similar expression of intent in this law suit — to return to the Best Western Encina in the reasonably near future — is called into question.

When, as here, standing turns on the likelihood of being wronged again, *see Fortyune*, 364 F.3d at 1081, there is nothing remarkable about measuring prior representations against the reality that the plaintiff has not yet done what she said she intended to do. Among other things, this may mean that she has made so many commitments to return to so many places of public accommodation in so many different locales that returning to the place at issue in this case — the Best Western Encina — is infeasible or, at least, implausible. In this way, evidence of prior statements may have probative value by shedding light on the present likelihood of repeated injury. If a district court were to so find, after an evidentiary hearing, I see no need for us to be "particularly cautious about affirming credibility determinations that rely on a plaintiff's past ADA litigation." Maj. Op. at 10370.

In sum, I would affirm because D'Lil failed to show any concrete plan or intent to return to the Best Western Encina

---

[2]There was evidence to this effect with respect to at least six prior suits arising out of a trip that D'Lil took to Redding. Although the record contains no evidence of whether these places had been made accessible such that D'Lil could have safely returned, Maj. Op. at 10370, the more relevant point is that D'Lil never tried to find out. Likewise, the majority posits that whether or not D'Lil revisited the hotels in Redding says little about her intent to visit the Best Western Encina. *Id.* However true this may be given differences between Redding and Santa Barbara, as well as how far apart they are, the salient inference about the likelihood of her returning to the Best Western Encina is that D'Lil *said* she would return to the Redding hotels but has not yet done so.

as of the time she filed her complaint. Accordingly, she falls short of the standard for standing to seek injunctive relief. To the extent questioned by the majority, I would not fault the district court for credibility concerns based on prior representations of an intent to return to numerous places of public accommodation coupled with the reality that those commitments remain outstanding.