**Ronald R. REITZ, Plaintiff,**

v.

**Scott J. KIPPER, in his official capacity as Nevada Commissioner of Insurance, Defendant.**

**No. 2:08–CV–1426–ECR–LRL.**

United States District Court,
D. Nevada.

Dec. 9, 2009.

Daniel F. Polsenberg, J. Christopher Jorgensen, Ann Marie McLoughlin, Lewis and Roca LLP, Las Vegas, NV, for Plaintiff.

Joanna N. Grigoriev, Attorney General, Las Vegas, NV, Shane S. Chesney, Office of the Attorney General, Carson City, NV, for Defendant.

## Order

EDWARD C. REED, JR., District Judge.

This case concerns the constitutionality of a Nevada law governing the licensing of insurance adjusters. Now pending before the Court is Plaintiff's motion (# 27) for summary judgment. For the reasons stated below, the motion (# 27) will be granted.

### I. Introduction

Plaintiff Ronald R. Reitz ("Reitz") is a resident of California who seeks to obtain an insurance adjuster's license in Nevada. Reitz is a public insurance adjuster licensed in nearly every state that has licensing regulations. He is also the president of Quality Claims Management Corporation ("Quality Claims"). Quality Claims provides hazard claim recovery services to investors, mortgage servicers, home-owners and businesses. Reitz complains that because he is not a resident of Nevada he is unable to obtain an insurance adjusters license in the state of Nevada without moving to Nevada, moving within 50 miles of Nevada's border or working for a competitor. He challenges the constitutionality of Nevada's insurance adjuster licensing scheme. On June 3, 2009, Reitz filed a motion (# 27) for summary judgment. Defendant Scott J. Kipper, Nevada Commissioner of Insurance ("the Commissioner"), responded (# 32), and Reitz replied (# 33).

### II. Motion for Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where no material factual dispute exists. *N.W. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir.1994). The court must view the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, *Bagdadi v. Nazar*,

84 F.3d 1194, 1197 (9th Cir.1996), and should award summary judgment where no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. FED.R.CIV.P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), cert. denied, 516 U.S. 1171, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Although the parties may submit evidence in an inadmissible form—namely, depositions, admissions, interrogatory answers, and affidavits—only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. FED.R.CIV.P. 56(c); *Beyene v. Coleman Sec. Servs., Inc.,* 854 F.2d 1179, 1181 (9th Cir.1988).

In deciding whether to grant summary judgment, a court must take three necessary steps: (1) it must determine whether a fact is material; (2) it must determine whether there exists a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) it must consider that evidence in light of the appropriate standard of proof. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Summary judgment is not proper if material factual issues exist for trial. *B.C. v. Plumas Unified Sch. Dist.,* 192 F.3d 1260, 1264 (9th Cir.1999). "As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Disputes over irrelevant or unnecessary facts should not be considered. *Id.* Where there is a complete failure of proof on an essential element of the nonmoving party's case, all other facts become immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Summary judgment is not a disfavored procedural shortcut, but rather an integral part of the federal rules as a whole. *Id.*

### III. Discussion

### A. Nevada Law Governing Licensing of Insurance Adjusters

In this case, Reitz challenges the constitutionality of the Nevada statute governing the licensing of insurance adjusters, Nev Rev. Stat. § 684A.070. Reitz argues that the statute violates the Privileges and Immunities Clause, Equal Protection Clause and Commerce Clause of the United States Constitution.

Nev.Rev.Stat. § 684A.070 provides in relevant part:

1. For the protection of the people of this State, the Commissioner may not issue or continue any license as an adjuster except in compliance with the provisions of this chapter. Any person for whom a license is issued or continued must:

[...]

(b) Except as otherwise provided in subsection 2, be a resident of this State, and

have resided therein for at least 90 days before his application for the license; [...]

2. The Commissioner may waive the residency requirement set forth in paragraph (b) of subsection 1 if the applicant is:

(a) An adjuster licensed under the laws of another state who has been brought to this State by a firm or corporation with whom he is employed that is licensed as an adjuster in this State to fill a vacancy in the firm or corporation in this State;

(b) An adjuster licensed in an adjoining state whose principal place of business is located within 50 miles from the boundary of this State; or

(c) An adjuster who is applying for a limited license pursuant to NRS 684A.155.

NEV.REV.STAT. §§ 684A.070(1)(b), 684A.070(2)(a)-(c).

Section 684A.155 provides in relevant part:

The Commissioner may issue a limited license to an adjuster licensed in an adjoining state who has contracted with a domestic insurer that has its principal place of business in this state to adjust and pay claims on business written in this state. A limited license issued pursuant to this section is valid for 3 years or the term of the contract between the adjuster and domestic insurer, whichever is shorter.

NEV.REV.STAT. § 684A.155(1).

In essence, section 684A.070(1)(b) makes Nevada residency a requirement for obtaining a Nevada insurance adjuster's license. This residency requirement, however, is subject to three exceptions contained in section 684A.070(2): (1) where an insurance adjuster licensed in a another state is brought to Nevada by his employer to fill a vacancy; (2) where an adjuster licensed in an adjoining state has

her principle place of business located within 50 miles of the Nevada border; and (3) where an adjuster seeks only a limited license. NEV.REV.STAT. § 684A.070.

## B. Standing

"Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986) (citing *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 173–180, 2 L.Ed. 60 (1803)). "Article III of the Constitution limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies.'" *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (quoting *Liverpool S.S. Co. v. Comm'rs of Emigration*, 113 U.S. 33, 39, 5 S.Ct. 352, 28 L.Ed. 899 (1885)). "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). A plaintiff must meet three requirements in order to establish Article III standing. *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000). "First, he must demonstrate 'injury in fact'—a harm that is both 'concrete' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990)). The second requirement is causation—a "fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant." *Id.* (internal quotation marks and citation omitted). Third, "he must demonstrate redressability—a substantial likelihood that the requested relief will remedy the

alleged injury in fact." *Id.* (internal quotation marks and citation omitted). Together, these three requirements constitute the "irreducible constitutional minimum" of standing. *Id.* (quoting *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130).

■ Though Reitz has submitted no evidence of a tangible economic injury, "economic injury is not the only kind of injury that can support a plaintiff's standing." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 262–63, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). "Impairments to constitutional rights are generally deemed adequate to support a finding of injury for purposes of standing." *Council of Ins. Agents & Brokers v. Molasky–Arman*, 522 F.3d 925, 931 (9th Cir.2008) (internal quotation marks and citation omitted). The Privileges and Immunities Clause provides that the "Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. Const. art. IV, § 2, cl. 1. "[O]ne of the privileges which the clause guarantees to citizens of State A is that of doing business in State B on terms of substantial equality with the citizens of that State." *Toomer v. Witsell*, 334 U.S. 385, 396, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948). Accordingly, here, Reitz's ability to work as an insurance adjuster in another state must be considered a fundamental right or privilege protected by the Privileges and Immunities Clause. *See Molasky–Arman*, 522 F.3d at 931 (holding that the ability of a citizen in one state to act as an insurance agent or broker in another state is a fundamental right or privilege protected by the Privileges and Immunities Clause); *Silver v. Garcia*, 760 F.2d 33, 36 (1st Cir.1985)(same, regarding insurance consultants) *Council of Ins. Agents + Brokers v. Viken*, 408 F.Supp.2d 836, 842 (D.S.D.2005) (same, regarding insurance agents and producers).

■ We find also that Reitz has satisfied the requirements of causation and redressability. Reitz's injury is caused by the residency requirement of Nev.Rev. Stat. § 684A.070 and its waiver provisions. Under the statute, in order to obtain an adjusters license in Nevada, Reitz, as a non-resident of Nevada, must either be brought to Nevada by an employer to fill a vacancy in that employer's Nevada firm or corporation, Nev.Rev. Stat. § 684A.070(2)(a) or move his principal place of business within fifty miles of the Nevada border, *id.* at § 684A.070(2)(b). As a non-resident, Reitz could instead obtain a limited license, but that would require him to contract with a domestic insurer that has its principal place of business in Nevada to adjust and pay claims on business written in Nevada. Nev.Rev.Stat. §§ 684A.070(2)(c), 684A.155(1). Moreover, a limited license is valid only for 3 years or the term of the contract between the adjuster and domestic insurer, whichever is shorter. Nev.Rev.Stat. § 684A.155(1). Nevada's licensing statute thus prevents Reitz from working as an insurance adjuster on terms of substantial equality to that of Nevada residents. *See Toomer*, 334 U.S. at 396, 68 S.Ct. 1156. Because the source of Reitz's injury is the statute's residency requirement and exceptions, Reitz injury would be redressed by a favorable decision invalidating the statute.

■ The Commissioner contends that, because there has been no discovery, he has "no independent knowledge of any facts pertaining to the Plaintiff[,] his standing to bring this action, or any alleged injury that the Plaintiff claims to have suffered as a result of the challenged legislation." (D.'s Opp. at 2(# 32).) This is not a basis for denying Plaintiff's motion. The Commissioner has not met his

burden under Fed.R.Civ.P. 56(f), which states: "If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order." FED.R.CIV.P. 56(f). The Commissioner's bald assertion that he has "no independent knowledge of any facts" pertaining to plaintiff's standing does not provide any type of meaningful rationale for denying the motion or granting a continuance. Failure to comply with the requirements of Rule 56(f) is a proper ground for proceeding to summary judgment. *Brae Transp., Inc. v. Coopers & Lybrand,* 790 F.2d 1439, 1443 (9th Cir.1986). Applying the law to the facts in the record, we have concluded that Reitz has standing. *See D'Lil v. Best W. Encina Lodge & Suites,* 538 F.3d 1031, 1035 (9th Cir.2008).

**B. Privileges and Immunities Clause of Article IV**

The Privileges and Immunities Clause provides that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. Const. art. IV, § 2, cl. 1. While the Privileges and Immunities Clause "cites the term "Citizens," for analytic purposes citizenship and residency are essentially interchangeable." *Supreme Court of Va. v. Friedman,* 487 U.S. 59, 64, 108 S.Ct. 2260, 101 L.Ed.2d 56 (1988). The "primary purpose of this clause ... was to help fuse into one Nation a collection of independent, sovereign States." *Toomer,* 334 U.S. at 395, 68 S.Ct. 1156. "It was designed to insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy." *Id.* Thus, we examine claims that a residency classification offends the Privileges and Immunities

Clause using a two-step inquiry. "First, we decide whether the activity in question is 'sufficiently basic to the livelihood of the nation ... as to fall within the purview of the Privileges and Immunities Clause.'" *Molasky–Arman,* 522 F.3d at 934 (quoting *Friedman,* 487 U.S. at 64, 108 S.Ct. 2260). "Second, if the challenged restriction deprives nonresidents of a protected privilege, we will invalidate it only if we conclude that the restriction is not closely related to the advancement of a substantial state interest." *Id.* (quoting *Friedman,* 487 U.S. at 65, 108 S.Ct. 2260).

Regarding the first step of our inquiry, work as an insurance adjuster falls within the purview of the Privileges and Immunities Clause. "There can be no doubt that insurance and occupations in the insurance industry are important to the national economy." *Molasky–Arman,* 522 F.3d at 934 (quoting *Silver,* 760 F.2d at 36). Consequently, the ability of a citizen of one state to work in the capacity of an insurance adjuster in another state must be considered a fundamental right or privilege protected by the Privileges and Immunities Clause.

We must next ask whether the challenged restriction is closely related to the advancement of a substantial state interest. *Friedman,* 487 U.S. at 65, 108 S.Ct. 2260. If it is, then the statute passes constitutional muster. A substantial state interest does not exist "unless there is something to indicate that non-citizens constitute a peculiar source of the evil at which the statute is aimed." *Toomer,* 334 U.S. at 398, 68 S.Ct. 1156.

The Commissioner argues that the local and urgent nature of the work done by insurance adjusters makes it essential for insurance adjusters to be physically available to those who depend on them. He points out that adjusters' duties

include investigating and inspecting the scene of an accident or fire as soon as a loss is reported, interviewing witnesses and reviewing police reports before determining the amount that should be paid to the policyholder. The Commissioner contends that the residency requirement and waiver provisions of Nev.Rev.Stat. 684A.070 assure, among other things, the accessibility of insurance adjusters to the insured. He also points out that in the case of public adjusters, who have a fiduciary relationship with the insured, the requirement of close proximity is of even greater import. Finally, the Commissioner asserts that only resident adjusters or those close to the border are readily available to inspect the accident scene or to be available to insurance claimants who need ready access to the claim file, which otherwise could be on the other side of the country.

The legislative history confirms that an insurance adjusters' geographical proximity to Nevada consumers was the impetus behind the residency requirement:

> The division believed it would be appropriate however for a non-resident adjuster, in an adjacent state, on a limited basis to do business only in adjusting claims for a domestic insurer. In most cases, Ms. Molasky–Arman thought it was more appropriate to have a resident adjuster because the majority of Nevada's companies were not domestic companies. That meant the records of those companies were not maintained in the state. She thought it was very important for consumers to have immediate access to the adjuster. However, when the insurer was a domestic one the insurer itself was immediately available to those claims, to those consumers and to the Commissioner of Insurance[.]

*Hearing on A.B. 578 Before the Assemb. Comm. on Commerce,* 1997 Leg., 69th Sess (Nev. 1997).

The record does not, however, support the proposition that nonresidents are a "peculiar source of evil" as the phrase is used in *Toomer.* "Peculiar" is defined as "characteristic of only one person, group, or thing: distinctive." *Merriam–Webster's Collegiate Dictionary* 853 (10th ed. 2001). Consumers' lack of immediate access to insurance adjusters and claim files because of geographical proximity is the evil that Nevada wishes to combat by means of section 684A.070, but non-residents are by no means a peculiar source of that evil. The statute at issue permits an insurance adjuster who resides in Las Vegas, Nevada to obtain an adjuster's license and thus perform adjustment services for a consumer more than 400 miles away in Stateline, Nevada. *See Molasky–Arman,* 522 F.3d at 935 (making the same geographical observation regarding a different Nevada statute). Non-residents, however, may not obtain insurance adjuster's licenses unless they meet certain onerous waiver criteria. Moreover, as discussed in more detail below, in light of modern business practices, the correlation between the residency of the insurance adjuster and the ease with which a consumer has access to his or her claim file is suspect at best. Accessibility of claim files is a poor justification for the proposition that non-residents constitute a "peculiar source of evil." *Toomer,* 334 U.S. at 398, 68 S.Ct. 1156. This is particularly true in light of the fact that the legislative history cited above indicates that it is generally the insurer, not the adjuster, who maintains possession of claim files.

 Even assuming that non-residents were a "peculiar source of evil," however, section 684A.070 is not closely related to ensuring accessibility of insurance adjusters to the insured or providing insurance claimants ready access to claim files. As noted above, the statute allows a resident

adjuster in Las Vegas, Nevada, to obtain a license to perform adjustment services for a consumer more than 400 miles away in Stateline, Nevada. The statute, however, does not permit the insurance commissioner to waive the Nevada state residency requirement for a nonresident agent living 51 miles from the Nevada border unless, of course, she meets either of the other two waiver criteria. This situation indicates that Nevada state residency is a poor proxy for geographical proximity. As stated in *Molasky–Arman* in a similar context, "[e]recting a fence at the Nevada border does nothing to promote geographic proximity." *Molasky–Arman*, 522 F.3d at 935 (internal quotation marks and citation omitted); *see also Barnard v. Thorstenn*, 489 U.S. 546, 553–54, 109 S.Ct. 1294, 103 L.Ed.2d 559 (1989) (geographic isolation insufficient to justify discrimination against nonresidents); *Council of Ins. Agents + Brokers v. Gallagher*, 287 F.Supp.2d 1302, 1312–13 (N.D.Fla.2003) (same).

The other exception to the statute's residency requirement applies where a nonresident adjuster is employed by a firm or corporation licensed in Nevada and is brought to Nevada by that firm or corporation to fill a vacancy. Nev.Rev.Stat. § 684A.070(2)(a). There appears to be no authority interpreting this provision. The meaning and import of the statute's requirements that a non-resident adjuster not only be employed by a firm or corporation licensed in Nevada, but also be filling a vacancy in his employer's firm or corporation is unclear. In a sense, every employee who is hired or who changes positions within her company is filling a vacancy; there must have been a job opening for her to fill, be it newly created or recently vacated by another. Regardless, this provision appears to be unrelated to the statute's dual goals of ensuring accessibility of insurance adjusters to the insured and providing insurance claimants

ready access to claim files. Neither the Commissioner's opposition to the present motion nor the statute's legislative history shed light on the connection between the goals of section 684A.070 and this exception to the residency requirement.

Finally, the criteria for non-resident adjusters to obtain limited licenses likewise is not closely related to ensuring accessibility of insurance adjusters to the insured or providing insurance claimants ready access to claim files. The legislative history cited above indicates that the reasoning behind the limited license provision is as follows. When the insurer itself is domestic, that insurer is immediately available to deal with claims, consumers and the Commissioner of Insurance. Thus, the insurance adjuster need not also be domestic. This justification, however, is inconsistent with the overall logic of the residency requirement, which centers around the proposition that adjusters' unique role in the insurance business requires them to be geographically proximate and thus physically available to the consumers they serve. The location of the insurer is irrelevant, if the adjusters' role is seen to be unique in this sense.

The Commissioner's argument regarding the connection between residency and availability of claim files likewise fails. "Whatever may have been said when people traveled by horseback and communicated by regular mail, today people communicate by telephone and facsimile and e-mail and overnight courier," *Molasky–Arman*, 522 F.3d at 935 (internal quotation marks and citation omitted). Requiring insurance adjusters be residents of Nevada in order to further the goal of providing consumers ready access to their claim files ignores the reality of modern business practices.

The Ninth Circuit has considered and rejected arguments almost identical to the

ones put forth by the Commissioner in this case. In *Molasky–Arman,* the issue was whether Nevada's "countersignature" statute, which precluded insurers from finalizing policies in Nevada without the countersignature of a resident agent and payment of a commission, violated the Privileges and Immunities Clause. *Molasky–Arman,* 522 F.3d at 935. The Ninth Circuit noted that, in light of modern technology, "state boundaries pose no obstacle", and thus the countersignature requirement was over-inclusive. *Id.; see also Gallagher,* 287 F.Supp.2d at 1312 (noting that even if geographical proximity were important, discrimination against non-residents would still be both over- and under-inclusive). Here, section 684A.070 is both over- and under-inclusive. Even assuming that, as the Commissioner asserts, the geographical proximity between adjusters and consumers is more important than geographical proximity between consumers and other actors in the insurance industry, modern transportation is such that an adjuster in New York City can be available on-site to a consumer in Nevada as quickly—or perhaps even more quickly—than an adjuster in a remote area of the state without easy access to an airport. Moreover, modern communications technology allows consumers easy access to claim files regardless of their location or the residency of the insurance adjuster working on the claim.

We note, finally, that though Nev.Rev. Stat. § 684A.070 does not impose an absolute bar to participation in the insurance adjuster business by nonresidents, an absolute bar is not required in order to implicate the Privileges and Immunities Clause. *See, e.g., United Bldg. and Const. Trades Council of Camden County and Vicinity v. Mayor of Camden,* 465 U.S. 208, 220, 104 S.Ct. 1020, 79 L.Ed.2d 249 (1984) (finding that the Privileges and Immunities Clause applies to a city ordinance requiring that at least forty percent of contractors' and

subcontractors' employees on city construction projects be residents of the city). Non-residents may be able to obtain insurance adjusters licenses—limited or otherwise—by fulfilling certain requirements. But that does not necessitate the conclusion that those able to satisfy the requirements are doing business on equal footing to Nevada residents; they are not.

We also reject the Commissioner's argument that because the statute does not offend the Commerce Clause, we should analyze the statute's constitutionality with a higher degree of deference. The Commissioner argues, in essence, that because the statute at issue does not offend the Commerce Clause, and the Privileges and Immunities Clause has a mutually reinforcing relationship with the Commerce Clause, in addition to the general presumption of constitutionality, we should accord the statute greater deference. In support of his position, the Commissioner points to *Hicklin v. Orbeck,* 437 U.S. 518, 531–32, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1978). In that case, the Supreme Court noted a "mutually reinforcing relationship" between the Commerce Clause and the Privileges and Immunities clause stemming from their common origin and "their shared vision of federalism." *Id.* at 531–32, 98 S.Ct. 2482. The Commissioner also cites the McCarran–Ferguson Act, 15 U.S.C. §§ 1011–1015 (1982), which permitted the states to enact discriminatory insurance taxes and regulations which would otherwise have violated the dormant aspect of the commerce clause. The McCarran–Ferguson Act was found to be a valid exercise of Congress's power under the commerce clause. *Prudential Ins. Co. v. Benjamin,* 328 U.S. 408, 439–40, 66 S.Ct. 1142, 90 L.Ed. 1342 (1946).

We agree with the Commissioner that, with the enactment of the McCarran–Ferguson Act, "Congress re-

moved all Commerce Clause limitations on the authority of the States to regulate and tax the business of insurance." *W. & S. Life Ins. Co. v. State Bd. of Equalization,* 451 U.S. 648, 653, 101 S.Ct. 2070, 68 L.Ed.2d 514 (1981). Nevertheless, though a particular statute may not offend the Commerce Clause, "that same exercise of power ... may be called to account under the Privileges and Immunities Clause." *United Bldg.,* 465 U.S. at 221, 104 S.Ct. 1020. The Commerce Clause and the Privileges and Immunities both "centrally define the relationship of the states to one another and delineate the treatment that one state must accord the citizens of another." *A.L. Blades & Sons, Inc. v. Yerusalim,* 121 F.3d 865, 870 n. 7 (3rd Cir.1997)(internal citation and quotation marks omitted). Despite this, the two clauses "have different aims and set different standards for state conduct." *United Bldg.,* 465 U.S. at 220, 104 S.Ct. 1020. "The Commerce Clause acts as an implied restraint upon state regulatory powers. Such powers must give way before the superior authority of Congress to legislate on (or leave unregulated) matters involving interstate commerce." *Id.* The Privileges and Immunities Clause, in contrast, "imposes a direct restraint on state action in the interests of interstate harmony." *Id.* As stated in *Silver:* "while the McCarran–Ferguson Act may protect discriminatory state legislation from attack under the commerce clause, it cannot shield such legislation from attack under the privileges and immunities clause." *Silver,* 760 F.2d at 38; *see also Metro. Life Ins. Co. v. Ward,* 470 U.S. 869, 880, 105 S.Ct. 1676, 84 L.Ed.2d 751 (1985)("Although the McCarran–Ferguson Act exempts the insurance industry from Commerce Clause restrictions, it does not purport to limit in any way the applicability of the Equal Protection Clause.").

In sum, section 684A.070 is unconstitutional under the Privileges and Immunities Clause because it discriminates "against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States...." *Molasky–Arman,* 522 F.3d at 936 (quoting *Toomer,* 334 U.S. at 396, 68 S.Ct. 1156). Having concluded that section 684A.070 violates the Privileges and Immunities Clause, we do not consider the Plaintiff's alternative arguments under the Commerce Clause and Equal Protection Clause of the Fourteenth Amendment.

### IV. Conclusion

Reitz has standing to challenge the constitutionality of section 684A.070 because he has suffered an injury caused by that provision which a favorable decision would redress. Section 684A.070 violates the Privileges and Immunities Clause because Nevada's discrimination against nonresidents with respect to insurance adjusters licenses is not closely related to a substantial reason for that discrimination beyond the mere fact that they are citizens of other states.

Because Reitz has not filed a motion for a preliminary or permanent injunction, no injunction will be issued in this case. *IT IS, THEREFORE, HEREBY ORDERED* that Plaintiff's Motion for Summary Judgment (# 27) is *GRANTED.*

*IT IS HEREBY FURTHER ORDERED, ADJUDGED AND DECLARED* that the residency requirement delineated in Nev.Rev.Stat. § 684A.070(1)(b) and its waiver provisions delineated in Nev.Rev. Stat. § 684A.070(2)(a)-(c) violate the Privileges and Immunities Clause of the United States Constitution. The opportunity to obtain a license to work as an insurance adjuster in the state of Nevada is a fundamental privilege protected by the Privileges and Immunities Clause, and section 684A.070's residency requirements are not

closely related to the advancement of a substantial state interest.

The Clerk shall enter judgment accordingly.