Theresa BROOKE

v.

Clay Andro PETERSON

Theresa Brooke

v.

Tricom Management, Inc.

Theresa Brooke

v.

Best Western International Inc.

Theresa Brooke

v.

Bahha, LLC

Case Nos. SACV 16-0435 AG (DFMx), SACV 16-0618 AG (DFMx), SACV 16-0665 AG (KESx), SACV 16-0738 AG (AGRx)

United States District Court, C.D. California.

Signed 05/13/2016

Peter K. Strojnik, The Strojnik Firm LLC, Phoenix, AZ, for Theresa Brooke.

Steven E. Boehmer, McDougal Love Eckis Boehmer and Foley, La Mesa, CA, for Clay Andro Peterson.

Royal F. Oakes, Michael A. S. Newman, Hinshaw and Culbertson LLP, "'Los Angeles, CA, for Best Western International Inc.

**Proceedings: [IN CHAMBERS] ORDER DISMISSING CASES FOR LACK OF JURISDICTION**

ANDREW J. GUILFORD, District Judge

## 1. Initial Impressions

Plaintiff Theresa Brooke has filed several cases in this district — over ninety by the Court's last count — alleging that hotels in the Orange County area are violating the Americans with Disabilities Act ("ADA") by not having pool lifts in their pools or Jacuzzi tubs. Some of those cases, captioned above, were assigned to this Court.

Congress passed the ADA "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(2). "Its passage was premised on Congress's finding that discrimination against the disabled is 'most often the product, not of invidious animus, but rather of thoughtlessness and indifference,' of 'benign neglect,' and of 'apathetic attitudes rather than affirmative animus.'" *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 944 (9th Cir. 2011) (quoting *Alexander v. Choate*, 469 U.S. 287, 295–96, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985)). This Court is not apathetic to ADA cases. Indeed, as a matter of course, it holds early scheduling conferences in ADA cases to reduce plaintiffs' costs in prosecuting cases that promise only injunctive relief and small statutory awards. But setting aside the Court's view of the ADA, the ADA reflects Congress's policy decision and the Court must faithfully uphold the laws of the United States.

The Court must also uphold Article III of the U.S. Constitution, which extends judicial power only to "cases" or "controversies." The Supreme Court has interpreted Article III to limit judicial power to cases where a plaintiff has "standing," or an injury-in-fact that is caused by the defendant and can be redressed by a favorable ruling. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Such limitations on judicial power are important safeguards in a democracy founded on a balance of power. Ensuring that a court doesn't upset that balance of power is also important to

ensure the legitimacy of its decisions. Indeed, limitations on judicial power are so important that "whether or not the parties raise the issue, federal courts are *required* sua sponte to examine jurisdictional issues such as standing." *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1035 (9th Cir. 2008) (citations and quotation marks omitted). "This self-enforced check is crucial in a nation governed by the rule of law. So courts take this sacred duty seriously and guard their limited jurisdiction jealously." *Abramson v. Marriott Ownership Resorts, Inc.*, ___ F.Supp.3d ___, ___, 2016 WL 105889, at *1 (C.D. Cal. Jan. 4, 2016) (citation omitted).

With those obligations in mind, the Court analyzes Plaintiff's allegations.

## 2. Analyzing the Allegations

Each of Plaintiff's complaints raise almost identical allegations that go as follows. Plaintiff is a disabled person who lives in Arizona. Plaintiff calls a hotel in California and asks whether it has a pool lift or other means of access to the hotel's pool or Jacuzzi tub. A hotel representative says no. Plaintiff's agent, who is allegedly an expert in ADA accessibility guidelines, then visits the hotel and verifies that the hotel doesn't have a pool lift. Plaintiff alleges that she intends to return to Orange County on an unspecified date "for business, pleasure or medical treatment" but that she is deterred from staying at the hotel because it doesn't have a pool lift. Plaintiff or an agent intend to "return" to the hotel to see if it still violates the ADA. But for the access barriers, Plaintiff would allegedly stay at the hotel in the "near future." Plaintiff seeks injunctive relief under the ADA, and declaratory relief, statutory damages, costs, and attorney fees under California's Unruh Civil Rights Act and California's Disabled Persons Act.

Plaintiff never alleges or otherwise asserts that she has visited the hotels.

## 3. Assessing the Absent Assertion

That absent assertion about visiting the hotels stood out to the Court, which typically handles multiple ADA cases each week, usually filed by the same plaintiffs who have committed themselves to making the world a more accessible place for persons with disabilities. In those cases, the plaintiffs invariably allege that they have encountered at least one barrier when visiting the place they are suing.

So without the allegation that Plaintiff had visited the hotels, or even personally encountered barriers there, the Court was concerned that Plaintiff lacked standing to bring her cases. The Court therefore issued Orders to Show Cause ("OSC's") as to why the cases should not be dismissed for lack of jurisdiction. In its OSC's, the Court stated that it was particularly attuned to the issue of standing because of a recent decision involving the same Plaintiff and same lawyer that questioned Plaintiff's standing. *See Brooke v. Kalthia Group Hotels*, No. 15–CV–1873–GPC (KSC), 2015 WL 7302736 (S.D. Cal. Nov. 11, 2015).

## 4. Reviewing the Responses

After reviewing Plaintiff's responses to the OSC's, the Court was left with more questions than answers. For example, Plaintiff argued that under the Ninth Circuit's decision in *Pickern v. Holiday Foods*, 293 F.3d 1133, 1135 (9th Cir. 2002), Plaintiff could have standing without ever visiting the hotels because her expert agent gave her actual knowledge about the hotels' barriers. As described later in this Order, the Court questioned that interpretation of *Pickern*.

As another example, Plaintiff cited two Ninth Circuit cases for the proposition that the Court should "refrain from resolving" the question of Plaintiff's intent to return, which Plaintiff argued was "inextricably intertwined" with the hotels' liability

under the ADA. (Response to OSC's (citing *Augustine v. United States*, 704 F.2d 1074 (9th Cir. 1983), and *Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730 (9th Cir. 1979)).) The Court questioned Plaintiff's interpretation of those cases as well, especially in light of the Ninth Circuit's more recent decision holding that a district court has the "power and duty to raise the adequately of [an ADA plaintiff's] standing sua sponte." *D'Lil*, 538 F.3d at 1035.

As a final example, Plaintiff requested that the Court hold evidentiary hearings to determine Plaintiff's legitimate intent to return to the hotels. The Court took this suggestion seriously and wondered how it would schedule such evidentiary hearings, how the hearings would be structured, whether defense counsel or the Court would question Plaintiff, and so on. Hoping to receive answers to those questions, among others, the Court scheduled a hearing.

### 5. Holding the Hearing

But, once again, the Court was left with even more questions than answers after the hearing. Rather than engage in a discussion about standing under the ADA, Plaintiff's counsel, Peter K. Strojnik, responded to the Court's questions with terse, unhelpful responses. For instance, the Court repeatedly asked whether Strojnik could cite any binding case where the plaintiff had standing but had never visited the noncompliant place of accommodation. Strojnik responded in the same way each time the Court posed this question: "It's in the briefs." Strojnik never stated which case he was referring to in the briefs. The most detailed response the Court received from Strojnik was "the case that in which *Kalthia* cites to a case in which an expert is permitted to establish standing on behalf of." Again, Strojnik didn't name the case. And, as it turns out, both responses were inaccurate. As described later, nei-

ther Plaintiff's briefs nor *Kalthia* cite a single binding case where a plaintiff had standing without ever visiting the place of accommodation.

One of the issues the Court wanted to explore at oral argument is whether these pending cases might be affected by rulings on standing in the case now pending before the United States Supreme Court, *Robins v. Spokeo, Inc.*, 742 F.3d 409 (9th Cir. 2014) *cert. granted*, ___ U.S. ___, 135 S.Ct. 1892, 191 L.Ed.2d 762 (2015). Strojnik's response was: "What is *Spokeo*?"

Strojnik not only failed to accurately answer the Court's questions, but he also expressed extreme disrespect to the Court throughout the hearing — most notably in his repeated, intentional interruptions of the Court. As another example, the Court asked Strojnik what he thought was the purpose of the statutes involved in the case. Rather than engage the Court, Strojnik said, "Well, I believe the Court can read the statutes as well as I can."

Counsel's unresponsiveness to the Court's questions and disrespectful demeanor indicated that Strojnik *wanted* the Court to rule against his client. Indeed, at one point Strojnik tried to incite the Court by accusing it of being a "barrier to equality." And despite not knowing the Court's ultimate ruling, Strojnik stated his intention of appealing the Court's ruling to the Ninth Circuit and all the way to the Supreme Court.

Significantly, Strojnik stated that "there is no correct decision today." He also stated "I think right now this issue is ripe for appellate review. The Court can come on one side or the other." The Court told Strojnik that those statements, among others, reflected his overall indifference to how the Court ruled, which could possibly invite error into the decision.

The Court responded to counsel that of course there was a correct decision and invited counsel to help it reach the correct decision. But Strojnik was firm — "no there is not." Instead of answering the Court's numerous prepared questions, Strojnik decided instead to stop talking and "submit on the briefs." The Court could have construed Strojnik's refusal to answer the Court's questions as willful violations of the Court's Orders. Strojnik's defiant dedication to not engaging the Court on the issues presented in the case, as well as some outrageous statements by counsel, also seemed to be inviting error into the Court's decisions.

Despite counsel's desire that the Court issue an appealable decision, the Court stated that it wanted to get it right — with or without Plaintiff's help.

## 6. Getting it Right

The Court now seeks to get it right, unfortunately without Plaintiff's help. The question presented by these cases is whether a plaintiff has standing to bring her ADA claims if she has never visited the noncompliant place of accommodation.

### 6.1 General Principles of Standing

■ "The Supreme Court has instructed [courts] to take a broad view of constitutional standing ... especially where, as under the ADA, private enforcement suits are the primary method of obtaining compliance with the Act." *D'Lil*, 538 F.3d 1031, 1036 (9th Cir. 2008) (internal alterations and citations omitted). "Though its purpose is 'sweeping,' and its mandate 'comprehensive,' the ADA's reach is not unlimited. Rather, as with other civil rights statutes, to invoke the jurisdiction of the federal courts, a disabled individual claiming discrimination must satisfy the case or controversy requirement of Article III by demonstrating standing to sue at each stage of the litigation." *Chapman*, 631 F.3d at 946. As noted earlier, "[b]oth

the Supreme Court and [the Ninth Circuit] have held that whether or not the parties raise the issue, 'federal courts are *required* sua sponte to examine jurisdictional issues such as standing.'" *D'Lil*, 538 F.3d at 1035 (citations and quotation marks omitted).

■ To have standing under Article III, a plaintiff must show (1) an injury-in-fact that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," (2) a causal connection between the injury and defendant's conduct, and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130.

### 6.2 Ninth Circuit Precedent on Standing for ADA Plaintiffs

Over a series of four cases, the Ninth Circuit has delineated the requirements of what is a sufficient injury-in-fact for plaintiffs to have standing to seek injunctive relief under the ADA.

#### 6.2.1 *Pickern v. Holiday Quality Foods Inc.*

In *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133 (9th Cir. 2002), the Ninth Circuit endorsed the so-called "deterrent effect doctrine" for a plaintiff to have standing to seek injunctive relief under the ADA. On two occasions, the plaintiff in *Pickern* visited a Holiday grocery store in Paradise, California and encountered multiple architectural barriers. *Id.* at 1135. In a declaration, he stated that he wanted to visit the Holiday store in Paradise again, that Holiday was his "favorite grocery store," and that he went to visit his grandmother in Paradise almost weekly. *Id.* at 1135. Although the plaintiff didn't return to the store before filing his lawsuit, he suffered an injury-in-fact because he was deterred from returning to the store due to the barriers, but would return

if the barriers were removed. *Id.* at 1138. In other words, he didn't need to engage in the "futile gesture" of returning to the store because he had "actual notice" that the store didn't comply with the ADA. *Id.* at 1136 (citing 42 U.S.C. § 12188). This theory of standing is called the "deterrent effect doctrine."

Three points from *Pickern* are particularly noteworthy here. First, although not explicitly part of the court's holding, the Ninth Circuit relied on the fact that the plaintiff had personally encountered at least *some* of the barriers to support that the plaintiff's injury was both "concrete and particularized" and "actual or imminent." *Id.* at 1138.

Second, the Ninth Circuit held that a plaintiff who had knowledge of the barriers didn't need to return to the store and re-encounter the barriers before filing his lawsuit. *Id.* But the Ninth Circuit did not hold that an ADA plaintiff has standing if she is deterred from visiting a noncompliant place of accommodation even if she has never visited that accommodation. Nor could the Ninth Circuit have made that holding, as those facts were not presented by the case.

Third, the Ninth Circuit didn't define "actual knowledge" or specify the source of a plaintiff's knowledge. But from the facts of the case, the plaintiff's knowledge needed to come from percipient, personal encounters with the barriers.

### 6.2.2 *Doran v. 7-Eleven, Inc.*

The Ninth Circuit expanded on the deterrent effect doctrine in *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034 (9th Cir. 2008). In *Doran*, the plaintiff had visited a 7-Eleven store on "several" occasions and personally encountered barriers there. *Id.* at 1038. The Ninth Circuit held that the plaintiff's injury was "concrete and particularized" because he had alleged that he "personally suffered discrimination on at least four

occasions *and* that those barriers have deterred him on at least four occasions from patronizing the store." *Id.* at 1040 (emphasis added). The plaintiff's injury was also "actual or imminent" in part because he "visited the 7-Eleven store on ten to twenty prior occasions," *and* he was "currently deterred from visiting the store because of its accessibility barriers." *Id.* There was also ample evidence of the plaintiff's intent to return once the barriers were removed, including that he had previously visited the particular store ten to twenty times, the store was conveniently located next to his favorite fast food restaurant in Anaheim, and he planned to visit Anaheim at least once a year on his annual trip to Disneyland. *Id.* at 1041. Thus, under the deterrent effect doctrine, there was ample evidence that he had an injury-in-fact.

The Ninth Circuit also held that as long as the plaintiff "has encountered or has personal knowledge of at least one barrier" at the accommodation and is deterred from returning because of that barrier, he has standing and may challenge other barriers discovered by his expert. *Id.* at 1047.

For the pending cases, two points from *Doran* are noteworthy. First, the fact that the plaintiff had personally encountered "at least one barrier" supported that his injury was both "concrete and particularized" and "actual or imminent." Second, the Ninth Circuit didn't define "knowledge." But based on the facts of the case, the plaintiff's knowledge of "at least one barrier" came through his percipient, personal encounter with the barrier, although he could rely on an expert to challenge more barriers than he encountered on a site he visited.

### 6.2.3 *D'Lil v. Best Western Encina Lodge & Suites*

Although not explicitly characterized as such, the Ninth Circuit further delineated

the "deterrent effect doctrine" in *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031 (9th Cir. 2008). In *D'Lil*, a disabled plaintiff encountered multiple barriers at a Best Western Encina hotel in Santa Barbara, California. *Id.* at 1034. The parties didn't contest the plaintiff's standing to sue, but the district court on its own motion raised the issue of standing. *Id.* The district court also ordered an evidentiary hearing where the only question was whether the plaintiff had a "legitimate intent to return" to the hotel. *Id.* at 1034–35. Contrary to the district court's finding, the Ninth Circuit held that there was "little doubt" the plaintiff would return to the hotel if it were made accessible, evidenced in part by the multiple trips she took to Santa Barbara each year, her three upcoming planned visits to Santa Barbara, and her stated preference to staying at the Best Western Encina due to its "taste, style, price, and location." *Id.* at 1038. As such, relying on *Pickern*, the Ninth Circuit stated that the plaintiff was not required "to engage in the 'futile gesture' of returning to the hotel to establish standing." *Id.*

For our purposes, *D'Lil* is notable for two reasons. First, a district court not only has the power, but also the duty, to raise the question of Plaintiff's standing on its own motion. Second, the Ninth Circuit characterizes the holding in *Pickern* as "not requiring ADA plaintiffs to engage in the 'futile gesture' of *visiting or returning* to an inaccessible place of accommodation in order to satisfy the standing requirement." *Id.* at 1037 (emphasis added).

But the phrase "visiting or returning" requires analysis. Again, it is unfortunate that Plaintiff's counsel would not participate in such analysis at oral argument. As noted earlier, the plaintiff in *Pickern* wasn't deterred from "visiting" the Holiday store, but was deterred from returning after encountering barriers on his

first visit. *Pickern*, 293 F.3d at 1138. This might seem like mincing words, but the distinction is important because someone could selectively cite *D'Lil* for the proposition that an ADA plaintiff need not "visit" the store at all. Not only were those facts not presented in *Pickern*, they weren't presented in *D'Lil*. In *D'Lil*, the sole question on appeal was the plaintiff's "intent to *return* to the Santa Barbara and, *upon her return*, her desire to stay at the Best Western Encina if it is made accessible." *Id.* at 1037 (emphasis added). Perhaps obviously, captured in the word "return" is the fact that plaintiff had actually visited the hotel in the first place.

### 6.2.4 *Chapman v. Pier 1 Imports (U.S.) Inc.*

In *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939 (9th Cir.2011), the Ninth Circuit sought to clarify its theory of when a plaintiff has standing to seek injunctive relief under the ADA. The plaintiff in *Chapman* sued for barriers he "personally encountered" during his visit to a Pier 1 store, as well as barriers he didn't personally encounter that were identified by an expert. *Id.* 943–44. Unlike the plaintiffs in *Pickern*, *Doran*, and *D'Lil*, the plaintiff was not deterred from returning to the store. *Id.* at 944. The Ninth Circuit held that the district court should have dismissed the plaintiff's ADA claims for lack of standing, as plaintiff never alleged how the identified barriers related to his physical disability. *Id.* at 955.

In reaching this conclusion, the Ninth Circuit sought to synthesize its previous decisions by creating a two-prong test for when a plaintiff has standing to sue for injunctive relief under the ADA. Specifically, "[a]n ADA plaintiff can establish standing to sue for injunctive relief *either* by demonstrating deterrence, *or* by demonstrating injury-in-fact coupled with an

intent to return to a noncompliant facility." *Id.* at 944. Although succinct, that rule statement still doesn't capture whether a plaintiff seeking to invoke the first prong (the deterrent effect prong) has standing if she has never encountered any of the barriers. Fortunately, *Chapman* makes clear that the answer to that question is no. Specifically, *Chapman* characterized the deterrent effect prong in the following ways.

- "A disabled individual also suffers a cognizable injury if he is deterred from visiting a noncompliant public accommodation *because he has encountered barriers related to his disability there.*" *Id.* at 949 (emphasis added).

- "A plaintiff can demonstrate sufficient injury to pursue injunctive relief when discriminatory architectural barriers deter him from *returning* to a noncompliant accommodation." *Id.* at 950 (emphasis added).

- "[A]n ADA plaintiff suffers an injury-in-fact ... because discriminatory architectural barriers deter him from *returning* to a facility ...." *Id.*

In each of those characterizations of the deterrent effect doctrine, a plaintiff must have "encountered barriers related to his disability" at a place of accommodation, although he need not "return" to the place of accommodation before filing his ADA claims. Again, the word "return" presumes that the plaintiff has already visited the place of accommodation. It seems that the difference between the first and second prong in *Chapman* is timing. Under the deterrent effect prong, the plaintiff intends to return when the barriers are removed. Under the second prong, the plaintiff intends to return even if the barriers aren't yet removed.

### 6.3 Analyzing Plaintiff's Standing

■ Against that binding precedent from the Ninth Circuit, the Court now analyzes whether Plaintiff has standing to bring her ADA claims. In each of her complaints, Plaintiff never alleges that she has ever visited the hotels, or even that she has encountered any barriers there. Instead, she seeks to invoke the deterrent effect doctrine by alleging that she was deterred from visiting the hotels based on her "actual knowledge" of the barriers. That "actual knowledge" allegedly came from expert reports, rather than her personal, percipient knowledge of the barriers. Those allegations are insufficient for Plaintiff to have standing to bring her ADA claims.

■ Binding precedent supports that under any theory of standing, including the deterrent effect doctrine, an ADA plaintiff must have previously visited a noncompliant place of accommodation to have an injury-in-fact under Article III. *Chapman*, 631 F.3d at 949, 950; *Doran*, 524 F.3d at 1040, 1041, 1047. Without ever visiting the hotels and encountering the barriers, Plaintiff's injury is not "particularized and concrete." *See Doran*, 524 F.3d at 1040; *Pickern*, 293 F.3d at 1138. And without ever visiting the hotels and encountering the barriers, Plaintiff's injury is not "actual or imminent." *See Doran*, 524 F.3d at 1040; *Pickern*, 293 F.3d at 1138. Whether the case law requires Plaintiff to *encounter* the barriers or if it is enough that Plaintiff have *personal, percipient knowledge* of the barriers doesn't matter here, as Plaintiff has never even visited the hotels. Accordingly, without a "particular and concrete" and an "actual or imminent" injury, Plaintiff lacks standing under Article III to bring her ADA claims. *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130.

A review of out-of-circuit cases further supports that an ADA plaintiff must personally encounter at least some barriers, or have personal, percipient knowledge of the barriers, to have standing. *See Kreis-*

*ler v. Second Ave. Diner Corp.*, 731 F.3d 184, 186 (2d Cir.2013) (relying on *Pickern* to find that a wheelchair-bound plaintiff didn't need to attempt to enter a diner because he had personal, percipient knowledge that it was inaccessible due to its eight-inch step); *Disabled Ams. for Equal Access, Inc. v. Ferries Del Caribe, Inc.*, 405 F.3d 60, 64 (1st Cir.2005) (relying on *Pickern* to hold that a plaintiff didn't need to *reencounter* the barriers on a cruiseship to have standing after she had visited the cruiseship on several earlier occasions); *Steger v. Franco, Inc.*, 228 F.3d 889, 893 (8th Cir.2000) (finding that only the ADA plaintiffs who had personally encountered at least one barrier related to their disabilities had standing).

Plaintiff's arguments to the contrary fail.

To start, Plaintiff's relies on the Southern District of California's decision in *Kalthia* to support her standing based on her "knowledge" of the barriers derived from expert reports. In *Kalthia*, the court held that a plaintiff can invoke the deterrent effect doctrine if she has "actual knowledge" of barriers from "some reliable basis ... such as personal encounters, assertions from an expert, or from other disabled individuals." *Kalthia*, 2015 WL 7302736, at *7. In *Kalthia*, Plaintiff had relied merely on a percipient witness visiting the hotel. *Id.* at *5. Plaintiff argues that the pending complaints are different from the complaint in *Kalthia* because she has added to her stock complaint an allegation that Plaintiff's actual knowledge came from "an expert in ADA accessibility guidelines."

Plaintiff's reliance on language selectively quoted from *Kalthia* is unpersuasive. It is puzzling why an expert agent would be any more credible or necessary to provide Plaintiff with knowledge of whether the hotels have pool lifts. After all, Plaintiff is not alleging that the hotels' pool lifts are in technical non-compliance with the ADA.

Instead, Plaintiff is alleging that the hotels don't have them at all. An expert is no more effective than the percipient witness in *Kalthia* in observing that there are no lifts. So Plaintiff's added allegations about experts are either unhelpful to resolve the standing issue, or are improper legal opinions to resolve the merits of Plaintiff's claims.

Further, not only is *Kalthia* an unpublished, district court case that is not binding on this Court, it is also unpersuasive given the binding, Ninth Circuit case law supporting that plaintiffs have standing only after visiting the place of accommodation and encountering at least one barrier there. *Chapman*, 631 F.3d at 949, 950; *Doran*, 524 F.3d at 1040, 1041, 1047; *D'Lil*, 538 F.3d at 1034. Although Plaintiff can rely on her expert agent to sue for *more* barriers than she encountered, she must have knowledge of *at least one* barrier based on her personal, percipient encounter with it. *Doran*, 524 F.3d at 1047.

Contrary to Plaintiff's statement at the hearing, the *Kalthia* decision doesn't cite a single binding case to support that a plaintiff has standing if she relies solely on knowledge provided by an expert when she has never visited the place of accommodation. The *Kalthia* decision cites only Ninth Circuit cases where the plaintiff had visited the place of accommodation and encountered at least one barrier there. *See Kalthia*, 2015 WL 7302736, at *4 (citing *Pickern*, 293 F.3d at 1135 and *Doran*, 524 F.3d at 1040). Even the Eighth Circuit case cited in *Kalthia* goes against the holding in *Kalthia*. *Id.* at *6 (citing *Steger*, 228 F.3d at 892–94). In that case, the plaintiffs who couldn't remember visiting or had not visited the accommodation before bringing their claims lacked standing. *See Steger*, 228 F.3d at 893.

Also contrary to Plaintiff's statement at the hearing, Plaintiff's brief doesn't cite a

single binding case finding that a plaintiff had standing without ever visiting the place of accommodation. Indeed, in all three Ninth Circuit cases on point, the plaintiffs who had standing had personally encountered at least one of the alleged access barriers. *Pickern*, 293 F.3d at 1135; *D'Lil*, 538 F.3d at 1034; *Doran*, 524 F.3d at 1038. Although they didn't need to *return*, they at least visited the place of accommodation once. *Id.*

The remaining citations to district court opinions in *Kalthia* don't persuasively support Plaintiff's position. For instance, the out-of-circuit opinion in *Resnick v. Magical Cruise Co., Ltd.*, 148 F.Supp.2d 1298 (M.D.Fla.2001), may actually undermine Plaintiff's position. In that case, the Middle District of Florida held that the plaintiffs *lacked* standing when they had never boarded a cruiseship, but had only reviewed a website to determine that the cruiseship had access barriers. *Id.* at 1303. The Court is also unpersuaded that Plaintiff's position is supported by *National Federation of the Blind of California v. Uber Technologies Inc.*, 103 F.Supp.3d 1073 (N.D.Cal.2015). In that case, plaintiffs had standing to sue Uber for denying car rides to blind customers and their guide dogs. *Id.* at 1077. Although the plaintiffs had never tried to use Uber's car services, they had standing because they had actual knowledge that they may be turned away if they asked for a ride. *Id.* at 1081. The case itself acknowledges that it is factually distinct from a case involving physical barriers. *Id.* Thus, without analyzing the legal reasoning of the case, the present cases are factually distinguishable because they all involve physical barriers.

In sum, Plaintiff has failed to persuade the Court that she has suffered an injury-in-fact sufficient to have Article III standing. Accordingly, the Court need not address the question of whether Plaintiff has a legitimate intent to return to the hotels.

But when counsel "submitted" before the Court could inquire about holding evidentiary hearings on that question, Plaintiff's counsel seemed to abandon the argument that Plaintiff has a legitimate intent to visit the hotels.

Plaintiff has failed to show cause why the cases should not be dismissed for lack of jurisdiction. Accordingly, the Court dismisses the Plaintiff's ADA claims. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

### 7. Exercising Supplemental Jurisdiction

█ Because the Court has dismissed the only federal claim in Plaintiff's complaints, the Court must determine whether to exercise its supplemental jurisdiction over Plaintiff's remaining state law claims. "[D]istrict courts may decline to exercise supplemental jurisdiction over a claim ... if the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). To make this discretionary decision, courts look to the interests of judicial economy, convenience, fairness, and comity. *Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087, 1091 (9th Cir.2008) (citing *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 351, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)).

█ Those interests weigh in favor of the Court declining to exercise its supplemental jurisdiction over Plaintiff's remaining state law claims, as there are no remaining federal claims. Because these cases are in their nascency, declining to exercise supplemental jurisdiction will not be too inconvenient for the parties. Indeed, some defendants have not even made an appearance in the cases. Judicial economy also weighs in favor of declining to exercise this federal Court's supplemental jurisdic-

tion over these cases. Comity to the state courts and fairness to opposing parties also weighs in favor of resolving the state law claims in a state forum. Accordingly, the Court declines to exercise its supplemental jurisdiction over Plaintiff's additional state law claims.

8. **Disposition**

The Court DISMISSES Plaintiff's cases.