Filed 9/23/21

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| CHERYL THURSTON, | |
| Plaintiff and Appellant, | E074098 |
| v. | (Super.Ct.No. CIVDS1620291) |
| OMNI HOTELS MANAGEMENT CORPORATION, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County. David Cohn, Judge. Affirmed.

Pacific Trial Attorneys, Scott J. Ferrell and Richard H. Hikida for Plaintiff and Appellant.

Sheppard, Mullin, Richter & Hampton, Gregory F. Hurley and Michael J. Chilleen for Defendant and Respondent.

1

Cheryl Thurston (Thurston) is blind and uses screen reader software[1] (a screen reader) to access the Internet and read website content. Defendant and respondent Omni Hotels Management Corporation (Omni) operates hotels and resorts. In November 2016, Thurston initiated this action against Omni, alleging that its website is not fully accessible by the blind and the visually impaired, in violation of the Unruh Civil Rights Act (the Unruh Act; Civ. Code, § 51 et seq.).[2] By way of a special verdict, the jury rejected Thurston's claim and found that she never intended to make a hotel reservation or ascertain Omni's prices and accommodations for the purpose of making a hotel reservation.

On appeal, Thurston contends the trial court erred as a matter of law (1) by instructing the jury that her claim required a finding that she intended to make a hotel reservation, and (2) by including the word "purpose" in the special verdict form, which caused the jury to make a "factual finding as to [her] motivation for using or attempting to use [Omni's] Website." We affirm.

## I. PROCEDURAL BACKGROUND AND FACTS

### A. *The Complaint.*

Thurston alleges Omni discriminated against visually impaired individuals, specifically herself, by denying them full and equal access to Omni's website

---

[1] Screen reader software vocalizes invisible code (alternative text) embedded beneath graphics on websites and describes the content of the web page. (*Thurston v. Midvale Corp.* (2019) 39 Cal.App.5th 634, 637.) The software communicates information on a website to the user, basically making a computer talk.

[2] All further statutory references are to the Civil Code unless otherwise indicated.

2

(<http://www.omnihotels.com> [as of Sept. 23, 2021]), as a result of access barriers. She claims these access barriers deterred her "from visiting any of [Omni's] physical locations" and "determining whether to stay at such locations." She identifies generic categories of issues—lack of alternative text, empty links, or redundant links—without specifying which particular issue she actually encountered. Thurston charges Omni with intentional discrimination in violation of the Unruh Act (§ 51, subds. (b), (f)), as well as a violation of Title III of the American with Disabilities Act of 1990 (ADA; 42 U.S.C.S. § 12101 et seq.).

*B. Trial Evidence.*

Using a screen reader, Thurston visited Omni's website on multiple occasions between May 2015 and June 2019, in search of a hotel room in Palm Springs or San Diego. While visiting the website, she encountered issues involving the reservation function: one blocked her from moving around in the calendar and another (an image) blocked her from making a reservation. Despite these accessibility issues, Thurston never tried to book a reservation by using a third party website (i.e., Orbitz, Expedia, Hotels.com, etc.)[3] or by calling Omni directly (her screen reader read Omni's phone number). Moreover, she never looked at any other hotel websites, and she never actually made any hotel reservations during these occasions when she searched for a room.

---

[3] Thurston testified that she has never booked a hotel through a travel website because her husband "make[s] those arrangements," and she never uses travel websites because she "heard you can have problems with" them.

Expert testimony explained that website accessibility for a screen reader depends on (1) the browser (i.e., Google Chrome, Internet Explorer, Firefox, etc.), (2) the screen reader and whether it is up-to-date, (3) the website's coding, and (4) user proficiency with a screen reader. If browsers and screen readers are not updated, they will produce problems navigating websites, which are coded perfectly for accessibility to visually impaired individuals.[4] No examination of Thurston's computer was conducted because her husband had destroyed the hard drive in 2018. Similarly, no examination of her browsing or search history was performed because her computer automatically deleted such history on a weekly basis. According to expert testimony, the issues Thurston experienced with Omni's website could be traced to her outdated browser (Internet Explorer), outdated screen reader software, and a lack of proficiency in using a screen reader, rather than the website's coding.

---

[4] In 2014, Omni hired a digital agency with expertise in designing and coding websites to relaunch a new version of its website to make it compliant with "WCAG 2.0" (web content accessibility guidelines) and accessible for visually impaired individuals. Subsequently, in 2016 and late 2018/early 2019, Omni hired other digital agencies to ensure continued accessibility of its website to visually impaired individuals. In May 2019, Omni launched another redesign of its website. As Omni's website was improved, it became unable to support older versions of Internet Explorer. Nonetheless, Omni provided its customers with other ways to book rooms, including e-mailing Omni, calling a hotel directly, visiting a hotel, or using a travel agent or third party website. Omni also provided a phone number dedicated to assisting people who use screen readers.

*C. Jury Instructions and Special Verdict.*

The parties disagreed on instructing the jury regarding an Unruh Act claim.[5] Thurston proposed alternative special instructions: Special jury instruction No. 1 was based on a violation of the ADA,[6] while special jury instruction No. 2 was based on intentional discrimination.[7] In contrast, Omni proposed one special jury instruction, which required a finding that Thurston had an "intent" to use Omni's "services in the

---

[5] Under the standard jury instruction, a plaintiff must prove: (1) the defendant denied the plaintiff full and equal accommodations; (2) a substantial motivating reason for the defendant's conduct was the defendant's perception of the plaintiff's actionable characteristic; (3) the plaintiff was harmed; and (4) the defendant's conduct was a substantial factor in causing the plaintiff's harm. (CACI No. 3060.)

[6] Thurston's special jury instruction No. 1, in relevant part, provides: ". . . Ms. Thurston must prove all of the following: [¶] 1. That Ms. Thurston is disabled based on her blindness; [¶] 2. That Omni Hotels' website is connected to, or has a nexus to, its places of public accommodation (i.e., its hotel locations); [¶] 3. That Omni Hotels' website contains barriers that prevent full and equal access by Ms. Thurston; [¶] 4. That Ms. Thurston either personally encountered or has actual knowledge of the accessibility barriers precluding her full and equal enjoyment of the website."

[7] Thurston's special jury instruction 2, in relevant part, provides: ". . . Ms. Thurston must prove all of the following: [¶] 1. That Omni Hotels denied full and equal accommodations, advantages, facilities, privileges, and services to Ms. Thurston; [¶] 2. That a substantial motivating reason for Omni Hotels' conduct was its perception of Ms. Thurston's disability; [¶] 3. That Ms. Thurston was discriminated against based thereon; and [¶] 4. That Omni Hotels' conduct was a substantial factor in causing the discrimination against Ms. Thurston."

manner in which those services are typically offered to the public."[8]  While Omni argued that Thurston must prove she accessed the website with the "intent of utilize[ing] its services and subscrib[ing] to or pay[ing] for [Omni's] services," Thurston maintained that neither the ADA nor the Unruh Act impose any requirement that the disabled individual, who is suing a defendant owner or operator of a public accommodation, "must be a customer, client, or 'bona fide patron' of th[at] public accommodation."  The trial court adopted a hybrid of the instruction, and the jury was told, inter alia, that to establish a violation of the Unruh Act, the evidence had to show Thurston "attempted to use Omni's website for the purpose of making a hotel reservation (or to ascertain Omni's prices and

---

[8]  Omni's special instruction No. 1, in relevant part, provides:  ". . . Ms. Thurston must establish . . . :  [¶]  (1) Ms. Thurston is a person with a physical disability; [¶] (2) Omni Hotels is a private entity that owns, leases, or operates a place of public accommodation; [¶]  (3) Ms. Thurston approached Omni Hotels with the intent of utilizing its services in the manner in which those services are typically offered to the public; [¶] (4) Ms. Thurston tendered the purchase price to Omni Hotels; [¶]  (5) The place of public accommodation was in violation of an official accessibility standard in effect at the time of construction, or; [¶]  (6) Ms. Thurston requested the place of public accommodation effectively communicate with her and Omni Hotels refused; and [¶]  (7) The violation was personally encountered by Ms. Thurston; [¶] (8) The violation denied Ms. Thurston full and equal access to a physical place of public accommodation; [¶] (9) Ms. Thurston experienced difficulty, discomfort, or embarrassment because of the violation; and [¶] (10) That a motivating reason for Omni Hotels' conduct was Ms. Thurston's physical disability."

6

accommodations for the purpose of considering whether to make a hotel reservation).["9]

In closing, plaintiff's counsel argued that Thurston had shown the intent element of the Unruh Act based on her testimony that what she "was hoping to accomplish . . . was to look at making a reservation at one of [Omni's] locations." In response, defense counsel argued that Thurston's testimony showed that she "never intended to go to Omni's website to book a hotel" because she never attempted to book a room via any travel website, by e-mailing Omni, or calling the hotel directly, and she never actually booked a room at another hotel. Defense counsel explained Thurston visited Omni's website as "part of [a] shakedown strategy to get money."

Following deliberations, the jury found that Omni operated a website to facilitate customer reservations at its hotels, and that Thurston was blind. However, it failed to find that she "attempt[ed] to use Omni's website for the purpose of making a hotel reservation (or to ascertain Omni's prices and accommodations for the purpose of

---

[9] The entire hybrid instruction provides: "Ms. Thurston claims Omni denied her full and equal access to Omni's website because of her blindness. To establish this claim, Ms. Thurston must prove all of the following: [¶] 1. That Omni operated a website for the purpose of facilitating customer reservations at Omni hotels; [¶] 2. That Ms. Thurston is blind; [¶] 3. That Omni denied Ms. Thurston full and equal access to Omni's goods, services, or information because Omni's website was inaccessible to her due to her blindness; [¶] 4. That Ms. Thurston attempted to use Omni's website for the purpose of making a hotel reservation (or to ascertain Omni's prices and accommodations for the purpose of considering whether to make a hotel reservation); [¶] 5. That Ms. Thurston was unable to use the website for her intended purpose because the website was not reasonably accessible to her due to her blindness; [¶] 6. That Omni failed to make available to Ms. Thurston substantially equivalent or greater access to the information otherwise available on the website; [¶] 7. That Ms. Thurston was harmed by her inability to use the website; and [¶] 8. That Omni's conduct was a substantial factor in causing Ms. Thurston's harm."

considering whether to make a hotel reservation)." The jury therefore rejected Thurston's claim under the Unruh Act, and judgment was entered in favor of Omni.

## II. DISCUSSION

Thurston contends the trial court erred as a matter of law in instructing the jury that her claim requires a finding that she "intended" to make a hotel reservation. She further asserts error in the inclusion of the word "purpose" in question No. 3 on the special verdict form on the grounds it caused the jury to make a "factual finding as to [her] motivation for using or attempting to use [Omni's] website." As we explain, we find no error.

In California, "[t]wo overlapping laws, the Unruh Civil Rights Act (§ 51) and the Disabled Persons Act (§§ 54-55.3), are the principal sources of state disability access protection." (*Jankey v. Lee* (2012) 55 Cal.4th 1038, 1044.) The Unruh Act, codified at section 51,[10] was "enacted to prohibit discriminatory conduct by individual proprietors and private entities offering goods and services to the general public." (*Brennon B. v. Superior Court* (2020) 57 Cal.App.5th 367, 378; see *Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 167 (*Angelucci*) [The Unruh Act was enacted to "create and preserve a nondiscriminatory environment in California business establishments by

---

[10] The Unruh Act, in relevant part, states: "(b) All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever. [¶] . . . [¶] (f) A violation of the right of any individual under the [ADA] shall also constitute a violation of this section." (§ 51, subds. (b), (f).)

'banishing' or 'eradicating' arbitrary, invidious discrimination by such establishments."].) The Unruh Act's remedies include actual damages (as much as treble damages), a minimum statutory award of $4,000 for each violation, and injunctive relief. (§ 52, subds. (a), (c)(3).)[11]

The Unruh Act "'stands as a bulwark protecting each person's inherent right to "full and equal" access to "all business establishments." [Citation.]' [Citation.] In enforcing the Act, courts must consider its broad remedial purpose and overarching goal of deterring discriminatory practices by businesses. [Citations.] [The California Supreme Court has] consistently held that 'the Act must be construed liberally in order to carry out its purpose.' [Citations.] [¶] In light of its broad preventive and remedial purposes, courts have recognized that '[s]tanding under [the Act] is broad.' [Citation.] At the same time, we have acknowledged that '"a plaintiff cannot sue for discrimination in the abstract, but must actually suffer the discriminatory conduct."' [Citation.] 'In essence, an individual *plaintiff has standing under the Act if he or she has been the victim of the defendant's discriminatory act*.'" (*White v. Square, Inc.* (2019) 7 Cal.5th 1019, 1025 (*White*), italics added; accord, *Angelucci, supra*, 41 Cal.4th at p. 175 ["[P]laintiff

---

11 Any defendant found to have "denie[d], aid[ed] or incite[d] a denial, or ma[de] any discrimination or distinction contrary to Section 51 . . . is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees . . . suffered by any person denied the rights provided in Section 51 . . . ." (§ 52, subd. (a).) Also, the complainant may seek injunctive relief. (§ 52, subd. (c)(3).)

must be able to allege injury—that is, some 'invasion of the plaintiff's legally protected interests.'"].)

"Put another way, the [Unruh Act] is 'confined to discriminations against recipients of the "business establishment's . . . goods, services or facilities."' [Citation.] [Unruh Act] claims are thus 'appropriate where *the plaintiff was in a relationship with the offending organization similar to that of the customer in the customer-proprietor relationship*.'" (*Smith v. BP Lubricants USA Inc*. (2021) 64 Cal.App.5th 138, 149, italics added.) For online businesses, the plaintiff must allege that "he or she visited the business's website, encountered discriminatory terms, and *intended* to make use of the business's services. These requirements are sufficient to limit standing under [the Unruh Act] to persons with a concrete and actual interest that is not merely hypothetical or conjectural." (*White*, *supra*, 7 Cal.5th at p. 1032, italics added.)

Beyond the pleading stage, if a plaintiff wants to prevail on an Unruh Act claim, he or she must present sufficient evidence to overcome the online defendant's argument that he or she "did not actually possess a *bona fide intent* to sign up for or use its services." (*White*, *supra*, 7 Cal.5th at p. 1032, italics added.) In *White*, a bankruptcy attorney decided to subscribe to Square's internet-based services, which allow "individuals and merchants to '"accept electronic payment without themselves directly opening up a merchant account with any Visa or MasterCard member bank."'" (*Id*. at p. 1023.) White visited Square's website on multiple occasions and carefully reviewed Square's terms of service. (*Id*. at p. 1024.) "Square's terms of service state that when a user creates an account, the user must '"confirm that you will not accept payments in

10

connection with the following businesses or business activities: . . . (28) bankruptcy attorneys or collection agencies engaged in the collection of debt."'" (*Ibid*.) Ultimately, White did not subscribe to Square's services because "he believed he could not sign the agreement without committing fraud." (*Ibid*.) His belief was based on a "letter from Square's counsel to shierkatz RLLP in which Square stated that '"signing up for Square's service with the intent to violate the applicable terms of service would be fraudulent."'" (*Ibid*.)

White sued Square for unlawful discrimination under the Unruh Act. (*White*, *supra*, 7 Cal.5th at pp. 1023-1024.) The California Supreme Court was asked to decide whether "a plaintiff ha[s] standing to bring a claim under the [Unruh Act] when the plaintiff visits a business's website with the intent of using its services, encounters terms and conditions that allegedly deny the plaintiff full and equal access to its services, and then leaves the website without entering into an agreement with the service provider?" (*Id*. at p. 1023.) Answering in the affirmative, our Supreme Court held that "a person who visits a business's website with intent to use its services and encounters terms or conditions that exclude the person from full and equal access to its services has standing under the [Unruh Act], with no further requirement that the person enter into an agreement or transaction with the business." (*Id*. at pp. 1032-1033.)

However, our Supreme Court specifically added that its "opinion does not preclude Square from disputing White's factual allegations. Square may argue in a motion for summary judgment or at trial that White did not actually possess a *bona fide intent* to sign up for or use its services. Our standing analysis is limited to the pleadings, in which

11

White unequivocally alleges his intention to use Square's services." (*White*, *supra*, 7 Cal.5th at p. 1032, italics added; see *Ruiz v. Musclewood Property Investments*, *LLC* (2018) 28 Cal.App.5th 15, 24 [company whose guard dog attacked a guide dog could be liable for interfering with the blind plaintiff's enjoyment of the sidewalks because plaintiff was using the sidewalk in the manner "typically offered to the public" and "had his enjoyment interfered with on six occasions"]; *Arnold v. Radisson Hotel Chatsworth* (C.D. Cal. Jan 5, 2011, No. 2:08-cv-08189-JHN-CWx) 2011 U.S.Dist. Lexis 742, at pp. *8-*11 [plaintiff could recover money damages under the Cal. Disabled Persons Act (§ 54) because she showed that she was an ordinary patron of the hotel's services]; *Antoninetti v. Chipotle Mexican Grill*, *Inc.* (9th Cir. 2010) 614 F.3d 971, 982 [plaintiff could not recover money damages under the Cal. Disabled Persons Act for visits to restaurant when he was not seeking to purchase food]; *Reycraft v. Lee* (2009) 177 Cal.App.4th 1211, 1218, 1224-1225 [wheelchair user must show she was a bona fide guest at a mobilehome park's community pool to bring a discrimination claim under the Cal. Disabled Persons Act].)

Thus, for Thurston to prevail on her Unruh Act claim against Omni, she had to show a "bona fide intent" to book a room. (*White*, *supra*, 7 Cal.5th at p. 1032.) She disagrees. According to Thurston, because the Unruh Act incorporates an ADA violation as an Unruh Act violation (§ 51, subd. (f)), claimants are not limited to "'clients or customers of the covered public accommodation,'" their intent or motivation for visiting the covered public accommodation is irrelevant, and they need not prove intentional discrimination. In support of this contention, she argues federal courts have consistently

12

interpreted Title III of the ADA provisions to "broadly apply to 'individuals.'" (*PGA Tour*, *Inc. v. Martin* (2001) 532 U.S. 661, 679 ["Title III's broad general rule contains no express 'clients or customers' limitation"]; *Molski v. M.J. Cable*, *Inc.* (9th Cir. 2007) 481 F.3d 724, 733 [quoting *PGA Tour*, *Inc. v. Martin*]; *Houston v. Marod Supermarkets*, *Inc.* (11th Cir. 2013) 733 F.3d 1323, 1333 [same]; *Menkowitz v. Pottstown Memorial Med. Ctr.* (3d Cir. 1998) 154 F.3d 113, 116-123 [medical doctor with staff privileges at a hospital could sue the hospital for disability discrimination under the ADA because Title III addresses discrimination against individuals].)

Thurston also argues that a plaintiff's intent is not mentioned as a required element within CACI No. 3060, and the Ninth Circuit has never imposed an intent requirement as an element to an ADA Title III claim. (See *Civil Rights Education & Enforcement Center v. Hospitality Properties Trust* (9th Cir. 2017) 867 F.3d 1093, 1096 [motivation is irrelevant on the question of standing under Title III of the ADA; "a plaintiff has constitutional standing" even if "her only motivation for visiting a facility is to test it for ADA compliance"]; see *id*. at p. 1102.) Furthermore, she notes the California Supreme Court has decided that intentional discrimination is not required when an Unruh Act claim is based on a violation of the ADA. (*Munson v. Del Taco*, *Inc.* (2009) 46 Cal.4th 661, 678.)

While we agree that an Unruh Act claimant need not be a client or customer of the covered public accommodation, and that he or she need not prove intentional discrimination upon establishing an ADA violation, we do not agree that an Unruh Act claimant's intent or motivation for visiting the covered public accommodation is

irrelevant to a determination of the merits of his or her claim. Thurston's argument conflates standing requirements with the merits of her claim. "A litigant's standing to sue is a threshold issue to be resolved before the matter can be reached on the merits." (*Blumhorst v. Jewish Family Services of Los Angeles* (2005) 126 Cal.App.4th 993, 1000.) Here, Thurston had standing to assert an Unruh Act claim against Omni. What was unclear was whether her factual allegations could overcome Omni's assertion that she did "not actually possess a *bona fide intent* . . . to use its services." (*White*, *supra*, 7 Cal.5th at p. 1032, italics added.) Following *White*, the trial court instructed the jurors to make this determination, and they concluded she could not. Consistent with our Supreme Court's guidance on this issue, such conclusion was proper. (*Ibid*.)

Accordingly, we find no error in the trial court's instruction regarding Thurston's Unruh Act claim or in the special verdict form.

### III. DISPOSITION

The judgment is affirmed. Defendant is awarded costs on appeal.

CERTIFIED FOR PUBLICATION

McKINSTER
Acting P. J.

We concur:


FIELDS
J.


RAPHAEL
J.


14